WARD L. DUNCAN *v.* MARCIA LOU BINFORD.

[No. 271A33. Filed February 22, 1972. Rehearing denied April 3, 1972. Transfer denied September 15, 1972.]

200

*Virginia Dill McCarty, Richard M. Orr,* of Indianapolis, for appellant.

*Stephen A. Free, Ging, Free and Brand,* of counsel, of Greenfield, *Howard J. DeTrude, Jr., John T. Lorenz, Kightlinger, Young, Gray & Hudson,* of counsel, of Indianapolis, for appellee.

HOFFMAN, C.J.—The primary issue raised by this appeal is whether it was an abuse of discretion for the trial court to refuse to set aside a default judgment entered against the purported father in a paternity action.

The facts relevant to the issues presented on appeal may be summarized as follows:

On February 6, 1970, plaintiff-appellee (the mother) filed a petition to establish paternity against defendant-appellant (the purported father).

Summons issued from the Clerk of the Superior Court of Hancock County. Such summons was served and the following return was made by the Sheriff of Hancock County:

"RETURN ON SERVICE OF SUMMONS

"I hereby certify that I have served the within summons:
"(1) By delivering a copy of the summons and a copy of

the complaint to the defendant on the 11 day of Feb. 1970. "(2) By leaving a copy of the summons and a copy of the complaint at *Ward L. Duncan,* the dwelling place or usual place of /s/ *office* [abode crossed out] of the said defendant, with a person of suitable age and discretion residing therein namely ——————— and by mailing a copy of the summons without the complaint to *Ward L. Duncan* at *104 McClellan Rd., Gfield,* the last known address of defendant(s).

"Sheriff Fee: 6.00

"Additional Comp.

"Date Served: 2-11-70.

/s/ Robert Sebastian

Sheriff of Hancock County, Indiana

/s/ By Tyner C. Shelby"

Thereafter, alias summons issued and was served by certified mail. A receipt card purporting to show delivery is contained in the record.

On May 4, 1970, the trial court entered the following order:

"Defendant having been duly served and failing to appear or Answer is now defaulted. Court now finds and adjudges for Petitioner on her position and now sets this matter for hearing as to expenses, Attorney fees and support of said child for May 22, 1970 at 9:00 A.M."

On May 22, 1970, the defendant not appearing in person or by counsel, the trial court heard the evidence and entered its finding, judgment and order, a summary of which follows:

That defendant-Duncan is the natural father of the child born to plaintiff-Binford; that plaintiff recover from defendant expenses incidental to her pregnancy in the amount of $1,252.35; that defendant pay $25 per week for the support of such child commencing May 20, 1970; and that defendant pay plaintiff's attorneys' fees in the amount of $500.

On June 23, 1970, plaintiff filed her petition for contempt of court citation alleging that the ordered amounts were unpaid and praying the trial court hold the purported father in contempt of court. Notice of a contempt of court hearing

to be held on July 10, 1970, was sent to the defendant by certified mail. Defendant-Duncan, not appearing at this hearing, was found in contempt of court and the trial court ordered a writ of attachment for the person of the defendant to be issued.

On July 21, 1970, Duncan appeared in person and by counsel and filed his motion to set aside the default judgment. The purported father was then ordered by the trial court to post in the office of the Hancock County Clerk the sum of "$2,000 to be held in escrow to cover the adjudication of contempt." Defendant-Duncan then filed his supplemental motion to set aside the default judgment and the matter was set for hearing on August 3, 1970.

The following order was entered on August 3, 1970:

> "Court now being duly advised finds and adjudges that the Motion to Set Aside the Default Judgment and the Supplemental motion to Set Aside Default Judgment are overruled. Court now orders the Clerk of this Court to allow the plaintiff and counsel to receive the sum of $1,977.35 of the $2,000.00 held in escrow for the prior adjudication of contempt. On receipt by plaintiff and Counsel of said monies the defendant will be purged of contempt."

The defendant then filed his "Motion to Relieve Defendant From and To Set Aside Order" of August 3, 1970. Subsequently, the trial court stayed the execution of said order on the condition that he post a $5,000 bond. Such bond was filed and execution of the order stayed.

After the mother filed her "Motion for Order to Clerk Releasing Funds," defendant filed his motion to correct errors and brief in support thereof. Such motion was overruled by the trial court and defendant-appellant has duly and timely brought this appeal.

A default judgment may be set aside under the provisions of Rule TR. 55 (C), Indiana Rules of Procedure, which provides:

"(C) Setting aside default. A judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of Rule 60 (B)."

Rule TR. 60 (B) (1), Indiana Rules of Procedure, states:

"(B) Mistake — Excusable neglect — Newly discovered evidence—Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order, default or proceeding for the following reasons:
"(1) mistake, surprise, or excusable neglect;"

The Appellate Court of Indiana in *Swartz* v. *Swartz* (1951), 121 Ind. App. 635, at 643-644, 101 N. E. 2d 822, at 825, stated:

"The law regarding the setting aside of default judgments, taken as a result of the mistake, inadvertence, surprise or excusable neglect of the defendant, is ably stated in the following cases:
"In the case of Hoag v. Jeffers (1928), 201 Ind. 249, 252, 253, 159 N. E. 753, the court said:
'Under the statute now in force (§ 423 Burns 1926), as under former statutes somewhat similar in effect (§ 396 R. S. 1881), to obtain relief from a judgment taken against a party by virtue of the action granted him by this statute, two things must concur: (1) The judgment taken against the judgment defendant through his mistake, inadvertence, surprise or excusable neglect; and (2) his showing by his complaint that he has a meritorious defense to the cause of action upon which the judgment against him was founded. [Citing authorities.]
* * *
'It is the function of the trial court to decide the question whether or not the default judgment in the particular case must be set aside, which action requires it to determine the sufficiency of the evidence which bears upon the question of the mistake, inadvertence, surprise or excusable neglect of the plaintiff. *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B 984.'
"In the case of *Carty* v. *Toro* (1944), 223 Ind. 1, 4, 57 N. E. 2d 434, the court stated:
'As indicated in the beginning the trial court in ruling upon the petition was required to exercise a sound judicial

discretion [Citing authorities.] Its decision will be set aside only for an abuse of such discretion. With this rule in mind the facts alleged must be analyzed.' " See also: *Strickland* v. *O'Rear* (1961), 134 Ind. App. 247, 249, 176 N. E. 2d 902, 903 (transfer denied).

In the instant case the first contention raised by appellant-Duncan is that the trial court's refusal to set aside the default judgment was an abuse of discretion because it was "contrary to * * * the undisputed evidence."

Appellant's assertion under this contention may be grouped in the following manner:

1. That he has shown mistake, surprise and excusable neglect because the uncontradicted evidence shows

"(a) Defendant was not served with summons in said action and defendant was without knowledge of the action and judgment proceedings prior to his receipt of notice of contempt of court proceedings, and

"(b) Defendant was so distraught, under emotional stress and impairment at the time the action was commenced and alias summons issued that he was unable to and did not exercise his ordinary judgment so as to retain counsel and present available defenses to the action;" and

2. That he has a meritorious defense to the paternity action because he had had a vasectomy making it "impossible for him to be the father of any child."

The first contention which we will consider is whether appellant's assertion that he was not served with summons shows excusable neglect or mistake.

Where a default has been taken against a person who has not been served with process and who thus has no notice of the institution of the action against him, such person is entitled to have the judgment set aside. *Ward* v. *Ward* (1947), 117 Ind. App. 225, 229, 71 N. E. 2d 131; *Dobbins* v. *McNamara* (1888), 113 Ind. 54, 14 N. E. 887.

Where service of summons is shown by sheriff's return, such return is conclusive to give the court jurisdiction over the

defendant, yet the defendant is not estopped from showing that summons was not in fact served on him and, hence, had no knowledge of the action. *Knowlton* v. *Smith* (1904), 163 Ind. 294, 71 N. E. 895; *Nietert* v. *Trentman, et al.* (1885), 104 Ind. 390, 4 N. E. 306.

The record before us contains the following evidence:

On February 6, 1970, summons was issued to the Sheriff of Hancock County for service. The sheriff's return of summons shows that one copy of the summons and one copy of the complaint was left at the office of Ward L. Duncan, and that one copy of the summons without the complaint was mailed to Ward L. Duncan at 104 McClellan Road, Greenfield, Indiana, the last known address of the defendant.

On March 20, 1970, an alias summons and copy of the complaint was sent by certified mail to Ward L. Duncan at 12 Masonic Building, Greenfield, Indiana, 46140. The receipt card showing delivery on March 21, 1970, is contained in the record and bears a scrawled signature purporting to be that of appellant.

Appellant testified that he did not receive the original complaint delivered to his office and that he did not receive the copy of the summons mailed to his home. He further testified that he did not receive the alias summons and that the signature on the receipt card was not his.

Plaintiff-appellee testified, over objection, that the signature on the return receipt card was, in her opinion, that of the purported father.

It was for the trial court to weigh this evidence and determine the credibility of the witnesses. This court cannot and will not weigh the evidence contained in the record before us. *Hoag* v. *Jeffers* (1928), 201 Ind. 249, 159 N. E. 753. If there is any evidence in the record in support of the decision of the trial court such decision must be affirmed. *Costello* v. *Wallace* (1915), 184 Ind. 734, 110 N. E. 660; *Hoag* v. *Jeffers, supra*. We cannot here say that the

determination of the trial court that the purported father had had notice of the institution of the action was an abuse of discretion.

The next contention raised is that the purported father's alleged emotional distress and impairment prevented the exercise of ordinary judgment such as to amount to excusable neglect for his failure to defend the action.

In *Ziegler* v. *Funkhouser* (1908), 42 Ind. App. 428, 85 N. E. 984, it was held to be excusable neglect where a woman was sick at the time she was served and physically unable to appear in court and physically unable to employ counsel until after the judgment was rendered. The Appellate Court of Indiana held that the undisputed evidence made such a case of excusable neglect that the trial court was left with no discretion as to setting aside the judgment. The statute was mandatory.

In *Jonsson, et al.* v. *Lindstrom, et al.* (1888), 114 Ind. 152, 16 N. E. 400, it was held that even though the defendant was unable to attend court on the day of trial because of illness, he was not entitled to have a default judgment set aside because of his refusal to employ an attorney to appear for him.

In both, *Hill and Another* v. *Crump* (1865), 24 Ind. 291, and *Slagle* v. *Bodmer, et al.* (1881), 75 Ind. 330, it was held erroneous for the trial court to refuse to set aside the judgment because the wife of the defaulted party was seriously ill. However, in *Slagle* our Supreme Court at 333 of 75 Ind., stated:

> "We are not to be understood as holding that it is every case of illness of the wife which will justify the husband in permitting the trial day to pass without attention; but in this case the allegations upon this branch of the motion are unusually full and strong."

In *McClain, Guardian* v. *Davis, et al.* (1881), 77 Ind. 419, at 421, our Supreme Court held that "unsoundness of mind and incapacity for doing business were a sufficient excuse for the failure to appear and make defense in the original case."

While these cases bearing on the physical and mental illness of a defaulted party are distinguishable on their facts from each other, and from the instant case, they point out that physical or mental infirmity will excuse the party's failure to defend the action where such infirmity prevented the party's timely appearance in court and prevented the party from engaging counsel to either appear in the absent party's behalf or to request a continuance until the party is able to appear.

In *Continental Assurance Company* v. *Sickels* (1969), 145 Ind. App. 671, at 674-675, 252 N. E. 2d 439, at 441, 19 Ind. Dec. 302 (transfer denied), the Appellate Court of Indiana stated:

> "In reviewing Indiana decisions and authorities defining the statutory language 'excusable neglect' we find the following statement in 2 Wiltrout Ind. Civ. Proc. § 1230, p. 243:
>
> " '(4) What Constitutes Excusable Neglect, etc. No fixed rule can be stated as to what facts and circumstances will constitute excusable neglect, mistake, or inadvertence for not appearing and defending against the default judgment. What constitutes excusable neglect, mistake or inadvertence within the meaning of the statute must be determined from the facts in each particular case, and any doubt should be resolved in favor of the application to set aside the default judgment in order to permit the merits of the case to be heard and determined. The term "excusable neglect" or "inadvertence" is a general term, and each case must necessarily depend upon its own facts and circumstances, and any doubt resolved in favor of the applicant in order that the merits of the cause may be heard and determined. * * *' "

In the instant case the evidence in the record includes the following portion of a medical discharge summary prepared by a physician who treated defendant-Duncan in the Hancock County Memorial Hospital:

> "It is my opinion that this man is suffering from a hysteria which caused him to lose his power of speech, inability

to swallow and loss of the use of his left arm and left leg. Probably all of this has been due to his mental state concerning his court case which is due to come up soon."

This statement was dated July 23, 1970, over two months after defendant was defaulted on May 22, 1970. In resolving all doubts in favor of the purported father we will assume such hysteria was caused by the court proceedings and that such hysteria arose upon learning of the proceedings against him. The question raised is whether such an impairment existed as to prevent the use of ordinary judgment in appearing or employing counsel to appear to defend the action or request a continuance.

In regard to this question there is conflicting evidence in the record before us. The purported father testified that he had been in the real estate business in Greenfield, Indiana, for 23 years. He testified that his office is maintained with two or three attorneys and that he ordinarily consults promptly with attorneys when he receives any legal matters, but that he did not consult counsel when he first received notice of this action. He further testified that he was extremely upset, couldn't think straight, and had panicked to the extent that he was unable to take care of his business in the ordinary manner. The record also contains testimony of the purported father showing that on the day before the contempt proceedings he was capable of telephoning the trial judge and the plaintiff's attorney and informing them that he was taking a business trip to Santa Fe, New Mexico, on the next day. Appellant was capable of and did make such trip the following day.

In light of this and other evidence in the record, we must emphasize that it was the duty of the trial court to weigh the evidence and determine the credibility of the witnesses. The evidence having been presented, the decision of whether to set aside the default judgment rested within the sound discretion of the trial court. *Strickland* v. *O'Rear, supra* (1961), 134 Ind. App. 247, 176 N. E.

2d 902 (transfer denied). Had a proper case for relief been shown it would have become incumbent upon the trial court to set aside the default judgment. In *Ziegler* v. *Funkhouser, supra,* it is stated that, "[i]f there is any evidence to sustain the finding of the court below the finding will be held conclusive." (At 432 of 42 Ind. App., at 986 of 85 N. E.)

In *Aetna Securities Co.* v. *Sickels* (1949), 120 Ind. App. 300, at 309-310, 88 N. E. 2d 789, at 793 (transfer denied), the Appellate Court of Indiana stated:

> "They [appellants] seek the application of that generally accepted doctrine that whenever, by fraud, inadvertence, mistake or excusable negligence, an unfair advantage has been obtained in a proceeding at law, the use of which would offend good conscience, equity, independent of statute, will grant relief. *Walker* v. *Heller et al.* (1883), 90 Ind. 198. Whether the facts and circumstances surrounding this particular transaction bring the appellants within the protective cloak of this principle of equity was exclusively for the trial court to determine. Its determination of the question is not available error if its discretion in the matter was reasonably exercised. *Cruse et al.* v. *Cunningham et al.* (1881), 79 Ind. 402."

We, therefore, conclude that because of the particular evidence contained in the record before us, the trial court did not abuse its discretion in refusing to set aside the default judgment.

The second contention argued by appellant is that the trial court should have set aside the default judgment because it was entered upon a mistake of fact, that is, that the defendant could not be the father of the child because a vasectomy had made him sterile. We do not here dispute that evidence showing the date and effectiveness of a prior vasectomy would be admissible in defending a paternity action. However, appellant's position that the default judgment should be set aside because the vasectomy amounted to a mistake of fact is untenable.

In *Jordan* v. *Johnson* (1965), 138 Ind. App. 53, 211 N. E. 2d 623, the appellant had consented to the rendition of a paternity judgment decreeing his paternity of the child. At the time he was under the mistaken belief that he was capable of fathering the child. It was later shown by a doctor's statement that he was, in fact, sterile at the time of conception. The Appellate Court, on review, held that this constituted a mistake of fact as was contemplated by the statute.

The instant case is readily distinguishable from *Jordan*. It cannot be seriously contended that there was a mistake of fact as to the father's capability to father a child when his sterility has been caused by his voluntary submission to a vasectomy. The mistake of fact in *Jordan* was that the father was unaware of his sterility at the time the judgment was rendered. Here, the defendant's sterility from the vasectomy was available as a valid defense to the action up until the time the judgment was rendered. He cannot now interject the defense of sterility *via* the vasectomy because he would not have been mistaken as to these particular facts.

The third contention argued by appellant is whether it was prejudicial error for the trial court to admit the opinion evidence of the mother as to the signature on the return receipt. Counsel for both appellant and appellee have cited this court to numerous early cases to support their arguments. The following general rules may be summarized from the cases cited.

In *Chance* v. *The Indianapolis and Westfield Gravel Road Company* (1870), 32 Ind. 472, at 474, our Supreme Court stated:

> "While it is true, that a witness who is not an expert must speak from his knowledge of having seen the party write, or from authentic papers derived in the course of business, it is equally true, that an expert may give his opinion from mere comparison."

In *Forgey, et al.* v. *The First National Bank of Cambridge City* (1879), 66 Ind. 123, it was held that only an expert wit-

ness could testify as to the genuineness of a signature based on a comparison with another admittedly genuine signature.

In the instant case a pertinent portion of the testimony of appellee, on direct examination, is as follows:

"Q. Are you familiar with the signature and handwriting of Mr. Duncan?

"A. Fairly so, yes.

"Q. Have you had occasion over past years to see and observe Mr. Duncan's handwriting and his signature?

"A. I have.

\* \* \* \* \*

"Q. Over what period of time have you been familiar with Mr. Duncan's signature?

"A. Well I was employed in your [counsel for appellee] office for seven years as your secretary and during that time I had occasion to see his signature on real estate appraisals in estates many times. Also, on various petitions that were signed in his capacity as appraiser.

"Q. I'll hand you here, Miss Binford, what has been identified as the Defendant's Exhibit A and ask you to observe the pink portion of that exhibit with a signature on it. Have you looked at it?

"A. Yes.

"Q. Do you have an opinion based on your familiarity with Mr. Duncan's signature as to whether or not the signature that appears on Defendant's Exhibit A is or is not his signature?

\* \* \* \* \*

"Q. Do you have an opinion?

"A. Yes, I do.

"Q. What is your opinion?

"A. It's been hastily scrawled but the W is almost identical.

"Q. Well what is your opinion?

"A. I believe it's his signature.

"Q. It is your opinion that it is—

'A. — yes, it is—

"Q. — that it is his signature?

"A. Yes."

In the instant case the witness was only asked to testify based on her familiarity with the purported father's signature on petitions and real estate appraisals during her seven-year period of employment as a legal secretary. Her opinion was based on her actual observance of the defendant's signature and went only to the weight of the evidence and not to its admissibility.

Furthermore, even had the mother's testimony not been admitted, the trial court would still have been compelled to make the determination as to the genuineness of the disputed signature based on the conflicting evidence in the record, to-wit: the defendant's denial that the signature was to be weighed against the admittedly genuine signatures in the record.

Appellant next contends that the trial court should have set aside the default judgment because the mother did not file a nonmilitary affidavit. This contention is based on the Soldiers' and Sailors' Civil Relief Act of 1940 which, in pertinent part, is as follows:

"(1) In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service." T. 50 U. S. C. A. App. § 520.

Under this section it has been held that when a default judgment is rendered without the filing of the requisite affidavit the judgment is not void but merely voidable. The statute was enacted for the exclusive benefit of the serviceman, and judgments rendered without compliance with its provisions are not void but voidable upon a proper showing of prejudice and injury in making his defense by reason of his military service. See: *Davidson* v. *General Finance Corporation* (D. C. N. D. Ga. 1968), 295 Fed. Supp. 878; Anno., 54 A. L. R. 2d 390, 394 (1957).

In the instant case the purported father has made neither a showing nor an allegation of military service and prejudice thereby such as to void the judgment entered by the trial court.

The next contention argued by appellant is that the contempt of court proceedings were in violation of Rule TR. 62(A), Indiana Rules of Procedure, and should have been set aside.

Rule TR. 62(A),[1] *supra*, at the time the judgment herein was rendered, read, in pertinent part, as follows:

> "Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of sixty (60) days after its entry."

This rule does not apply to support orders in paternity judgments under authority of IC 1971, 31-4-1-19, Ind. Ann. Stat. § 3-641 (Burns 1968), under which this action was brought. Section 3-641, *supra*, in pertinent part, provides:

> "Finding or verdict—Judgment for support of child—Modification of judgment—Release—Expenses of pregnancy and birth—Execution—Records confidential.—If the hearing be had with a jury, the verdict of the jury shall state only that the jury finds in favor of the petitioner, or the defendant as the case may be. If the verdict or finding be against the defendant, the court shall enter a judgment against him, and make an order which shall make adequate provision for the support of the child, taking into consideration the needs of the child and the ability of the defendant to pay. Such order shall be a continuing one and the court shall have jurisdiction to modify it with respect to the amount of support and the method of payment at any time before the child reaches its majority or is emancipated.
> 
> \* \* \* \* \*
> 
> The judgment shall establish the paternity of the child and may also provide for the payment by the father of said child of the necessary expenses incurred by, or on behalf of, the mother, in the course of the pregnancy, birth of the child, and prosecution of an action to establish paternity of said child, including court costs and reasonable attorneys' fees under such terms and conditions as the court may prescribe, except that no such attorney fee shall be paid to

---

1. Subsection (A) of Rule TR. 62 was amended March 22, 1971.

any duly elected prosecuting attorney or his deputy who
may represent such mother in any such proceeding. Execu-
tion may issue on such judgment whenever any amount is
due thereon; and shall be executed without any relief what-
ever from valuation, appraisement or exemption laws. * * *."

Under this statute, the only ultimate issue to be resolved
is the question as to the paternity of the child. *Barkey* v.
*Stowell* (1947), 117 Ind. App. 162, 70 N. E. 2d 430.
▮ An order accompanying such finding must make ade-
quate provision for the support of the child taking into
consideration the needs of the child and the ability of the
father to pay. Section 3-641, *supra.* The jurisdiction of the
trial court to modify the order for support as to amount or
method of payment is continuing until the child reaches
majority. *Hunsucker* v. *Dye* (1954), 125 Ind. App. 247, 123
N. E. 2d 925. Were we to hold Rule TR. 62(A), *supra,*
applicable the result would be, in certain circumstances, to
withhold the child's only means of support. Such would be not
only undesirable and impractical but contrary to the express
language of § 3-641, *supra,* which states "[e]xecution may
issue on such judgment whenever any amount is due there-
on; * * *."

Alternatively, even were we to apply Rule TR. 62(A),
*supra,* our holding as to other issues raised would render this
question moot. No funds have been released to the mother, in
fact, the funds ordered into escrow to purge the purported
father of the contempt charge are still being held in escrow.
The bond posted to stay the execution and proceedings on the
default judgment has been released, and execution is being
stayed under an appeal bond filed with the trial court. The
effect of our holdings, as herein set forth, places the defendant
in no worse position than if contempt proceedings had never
been instituted. He will still be required to pay no more, and
no less, than was ordered by the trial court.

The final contention argued by the purported father is
that the default judgment should have been set aside for

the mother's failure to apply for entry of default and default judgment pursuant to Rule TR. 55(A) and (B), Indiana Rules of Procedure.

Under this contention, any argument by the purported father as to the mother's failure to comply with Rule TR. 55(B), *supra,* is deemed waived by his failure to preserve such specification of error in his motion to correct errors. Specification No. 10 of appellant's motion to correct errors, with which we are here concerned, reads as follows:

> "10. The Court erred in overruling defendant's motion to set aside the Default Judgment entered on May 22, 1970, for the reason that plaintiff failed to comply with Rule 55(A) of the Rules of Procedure of the Supreme Court of Indiana, prior to the entry of default on May 4, 1970, by filing an affidavit or otherwise showing that defendant had failed to plead or otherwise defend the cause."

We will, therefore, consider this specification as it relates to Rule TR. 55(A),[2] *supra,* which, at the time this default judgment was rendered, read:

> "(A) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by *affidavit or otherwise,* the clerk shall enter his default." (Emphasis supplied.)

The Civil Code Study Commission Comments as found in 3 Ind. Prac.—Rules of Civ. Proc. Harvey, at 519, read, in part, "Where the court records show the default, no affidavit is necessary."

In the instant case the record before us clearly shows that no appearance was made by, or for, the purported father prior to the rendition of the default judgment. The entry of default was proper.

This court has been and will continue to be extremely mindful to insure that litigants are not erroneously deprived

---

2. Amended January 1, 1971.

of a fair and full hearing of the merits of their case. With respect to setting aside default judgments, we require that the statutes be liberally construed and that all doubts be resolved in favor of the defaulted party. Even so, under the particular circumstances of the instant case no abuse of discretion by the trial court has been shown.

The judgment of the trial court is affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 278 N. E. 2d 591.