IMA JEAN HOWLAND *v.* LEON FREDRICK HOWLAND.

[No. 2-1173A257. Filed November 20, 1975.]

*Frank W. Morton, Morton, Tumbove, Rogers & Ruble,* of Indianapolis, for appellant.

*Norman E. Brennan,* of Indianapolis, for appellee.

WHITE, J.—The appellant Ima Jean Howland (Wife) appeals from a judgment which denied Leon Howland (Husband) a divorce on his complaint and granted her a divorce on her cross-complaint. The decree awarded Husband custody of the children, his individually owned real property and most of the jointly owned real and personal property; no order of support was made. Wife now contends that the Court committed error both in the award of custody and in the division of property.

We affirm as to the custody and reverse as to the property settlement.

The parties were married in 1953 and had five children who, at the time of trial, ranged between 4 and 16 years of age. (Wife had also suffered two miscarriages and a stillbirth.) During the marriage Husband started a television repair business which has apparently been successful. The couple owned the building and ground on which that business was located and several other parcels of real property, both in this state and in Maine.

The trial court did not err in granting Wife the divorce on her cross-complaint. The undisputed evidence is that Husband fathered a child born out of wedlock, a fact unknown to Wife prior to the commencement of a paternity action in the Juvenile Court of Marion County a year

after the birth, and that Husband's involvement with the other woman extended from some time prior to the conception of that child to some time after the commencement of this action. In addition, Husband, over Wife's objections, began to become deeply involved in the activities of a trade association and as a result spent much time away from home and business.

However, determination of which party should be granted a divorce is not determination of which party should have custody of the children of the marriage. The welfare of the children is the determining factor in resolving that issue, not the relationship between, or the desires of, the parties. The party against whom the divorce is decreed may be granted custody. *Watkins* v. *Watkins* (1943), 221 Ind. 293, 47 N.E.2d 606; *Lucas* v. *Lucas* (1949), 119 Ind. App. 360, 86 N.E.2d 300.

Although Husband's behavior prior to the separation of the parties justified the granting of Wife's cross-complaint, Wife's behavior at and subsequent to the separation was such that the trial court, in careful exercise of its discretion, could award custody of the children to Husband.

The evidence most favorable to Husband shows that the separation occurred when Wife, two months after learning of the illegitimate child, abruptly disappeared from the house and reappeared several days later to announce that she wanted a divorce. From then on she sometimes lived in a rented apartment and sometimes in the family house, but wherever she lived she voluntarily followed a life style that thrust upon Husband the full responsibility for the care of the children. Her sole contribution to the care of the family during this period was the fixing of an occasional one-dish evening meal that she could leave on the stove when she went out for the evening, night or weekend. During the eleven month period between the separation of the parties and the final day of presentation of evidence Husband alone cared for and maintained the children.

The matter of property settlement and/or alimony, unlike custody, does to a certain extent depend on the relationship between the parties. In fact, Ind. Ann. Stat. § 31-1-12-12 (Burns Code Ed.), in effect at the time of trial herein,[1] specifically provided:

"A divorce granted for misconduct of the husband shall entitle the wife to the same rights, so far as her real estate is concerned, that she would have been entitled to by his death."

The evidence shows that at the time of trial the parties had equal interests in the following real property:

| PROPERTY | VALUE | MORTGAGE | EQUITY |
|---|---|---|---|
| Residence | $28,000.00 | 4,000.00 | 24,000.00 |
| Adjacent lot | 6,500.00 | | 6,500.00 |
| Business property | 25,000.00 | | 25,000.00 |
| Residential Rental Properties | | | |
| North LaSalle | 8,500.00 | 3,800.00 | 4,700.00 |
| North Drexel | 9,500.00 | 3,800.00 | 5,700.00 |
| N. Jefferson (1042) | 7,500.00 | 400.00 | 7,100.00 |
| N. Jefferson (1050) | 8,000.00 | 800.00 | 7,200.00 |
| Cabin and lot in Maine | 3,000.00 | | 3,000.00 |
| Adjacent lot in Maine | 1,000.00 | | 1,000.00 |
| | 97,000.00 | 12,800.00 | 84,200.00 |

In addition, in 1969 Husband inherited from his father an unencumbered 40 acre tract of land in Maine valued at $20,000, title to which was in husband.

The evidence is rather sketchy concerning personal property and other assets. They owned U.S. Savings Bonds in the amount of $700.00, corporation stock in the amount of $50.00, and household furniture in the amount of $1,000.00. They also owned other property of unspecified value, including some undescribed furniture in the cabin in Maine, some furniture in two of the rental properties, a 1968 Dodge Coronet automobile, a Dodge station wagon of undisclosed model or

---

1. Since repealed by Acts of 1973, P.L. 297, the so-called "no-fault" divorce Act.

year, a 14 foot fiberglass boat with a 40 horsepower motor, and a garden tractor. There is little evidence of the property used in the conduct of the television repair business other than that there was "certain equipment and inventory and merchandise", and that there were two trucks, one inoperable and valueless and the other a 1971 Dodge panel truck of unspecified value. (After the separation Husband had used the station wagon and two trucks as collateral for a personal loan of $3,393.00, money he needed to satisfy a judgment entered against him in a suit of undisclosed nature filed against him in Maine by his sister-in-law.)

There is no evidence whatsoever concerning the profits of the television business, the market value of the business as a business, or Husband's total income. The business apparently was at least moderately successful since there were several employees. Husband did testify that the combined rentals received from the four rental properties in the average year was $700.00 more than needed to satisfy mortgage payments, property taxes and maintenance expenses on those properties.

The evidence shows that Wife contributed to the accumulation of property. The television repair business was started early in the marriage, and the evidence indicates that during the day Wife would work as a clerk in the store while Husband worked in a factory (and presumably worked in the store evenings) ; that she worked as a clerk until the birth of their first child; that thereafter she kept the books and records of the business; that she worked on the maintenance of the rental properties (patching and painting walls, etc.) ; and that she collected rents and paid utility and other bills in relation to the rental properties. The evidence neither shows nor implies that Wife committed any waste of the couple's assets.

The trial court awarded Wife the two rental properties on North Jefferson and the rental property on North Drexel (total value $25,000, total mortgages $5,000, equity $20,000) and the 1968 Dodge Coronet of unspecified value. Husband

was awarded the residence, the adjacent lot, the cabin and adjacent lot in Maine, the business property, and the rental property on North LaSalle Street, all of which had been owned by both the parties (total value $72,000, total mortgages $7,800, total equity $64,200), and the property he had inherited in Maine (value $20,000 and unencumbered). He was also awarded the business and all its assets, the household furnishings, and all other personal property.

The determination of the appropriate property settlement and/or alimony award[2] is a somewhat involved matter that is well described in *Bahre* v. *Bahre* (1962), 133 Ind. App. 567, 570, 181 N.E.2d 639, 641:

> "There are no hard and binding rules, nor is there any single test, which may be followed for the guidance of the court in its award of the sum which the husband shall pay to his wife whom he has injured by reason of the wrongs and grievances of which she had complained and which she has sustained by the evidence upon trial. . . . However in determining the amount of alimony in a particular case, our courts have stated that certain factors must be investigated and considered. They are (1) the existing property rights of the parties, . . .; (2) the amount of property owned and held by the husband and the source from which it came . . .; (3) the financial condition and income of the parties and the ability of the husband to earn money, . . .; (4) whether or not the wife by her industry and economy has contributed to the accumulation of the husband's property, . . .; (5) the separate estate of the wife, . . . .
>
> "Certain rules of thumb have been laid down to further guide the trial court, such as that an award to an innocent and injured wife should be a sum as would leave her in as good condition as she would have been if her husband had died and she remained a surviving widow . . . . The wife must be left as well in non-cohabitation as in cohabitation. . . ." (omitting citations only).

In the instant case the property distribution was not, and could not have been, determined in accord with the above de-

---

2. Even the nature of such award is somewhat ambiguous. See our discussion on this point in *Wellington* v. *Wellington* (1973), 158 Ind. App. 649, 304 N.E.2d 347, 351.

scribed considerations. The evidence presented by the parties is not sufficient to enable the trial court (or this court) to make a reasonable evaluation of the personal property of the defendants, or to determine "the financial condition and income of the parties and the ability of the husband to earn money." The latter factor is of more than passing import in the instant case since the meager evidence presented implies that Husband's present ability to earn money might to some extent be enhanced as a result of Wife's past industry.

As we said in *Hardiman* v. *Hardiman* (1972), 152 Ind. App. 675, 682, 284 N.E.2d 820, 824:

"First and most elemental in any fair, equitable distribution of property is a knowledge of the totality of the property in which the parties to the divorce hold an interest."

A trial court commits an abuse of discretion if it orders a property distribution without knowing the value of the property it is distributing. *Hardiman* v. *Hardiman, supra; Snyder* v. *Snyder* (1964), 137 Ind. App. 72, 198 N.E.2d 8.

Wife raises other alleged errors which require brief discussion:

1. Wife alleges numerous errors in the admission of specific testimony from third persons in relation to custody. Assuming *arguendo* that Wife is correct in all such instances her arguments would not prevail. Even were the entire testimony of all non-party witnesses omitted, the testimony of the parties, including that of Wife, would be sufficient to sustain the court's award of custody.

2. Wife argues that the trial court committed error in overruling her request for Stay of All Proceedings Pending Appeal. TR. 62(B) authorizes the trial court "[i]n its discretion" to grant a stay. Wife neither shows that the trial court abused its discretion in this

matter nor suggests what relief could now be granted by this court had she shown an abuse of discretion.

3. After judgment had been entered in this cause Wife neither moved out of the family residence nor executed the instruments necessary to effectuate the transfer of properties, both as ordered by the judgment. Upon Husband's application for a Rule to Show Cause the trial court, after hearing, found Wife in contempt and appointed a commissioner to transfer properties. Wife contends that the trial court erred in holding her in contempt. The record filed with this court does not contain a transcript of the hearing. The record merely contains Husband's Petition, the court's Order to Show Cause, Wife's response to that order (which response was in the nature of excuse rather than of denial), and the Order Book entry showing merely that Wife was found in contempt. On the basis of that record we are unable to say the trial court committed error.

That portion of the judgment granting Wife a divorce on her cross-complaint is affirmed. That portion of the judgment granting Husband custody of the children is affirmed. That portion of the judgment relating to the division of property is reversed with instructions to grant a new trial on the sole issue of division of property pursuant to the views expressed herein.

Affirmed in part, reversed in part, remanded.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 337 N.E.2d 555.