In re The Marriage of Virginia M. HAW-
BLITZEL, Respondent-Appellant,

v.

Stanley J. HAWBLITZEL,
Petitioner-Appellee.

No. 3–482A61.

Court of Appeals of Indiana,
Third District.

April 21, 1983.

Charles W. Lahey, South Bend, for respondent-appellant.

Arthur J. Perry, South Bend, for petitioner-appellee.

GARRARD, Judge.

The wife appeals from a judgment rendered on the husband's petition for dissolution of marriage.

The parties were married in December of 1973. The marriage was the second for both. Each spouse entered the marriage owning a residence in South Bend. Husband's house was located at 20150 W. Dice Street and wife's was at 1323 Longfellow Drive. The parties resided in the wife's residence during their marriage. The residence on W. Dice Street was sold in 1977 for $19,200 and a house was purchased at 200 Michigan Street in Argos, Indiana. The parties were remodelling the Argos residence when the petition for dissolution was filed. Also, each spouse brought sundry personal possessions into the marriage, including household goods and an automobile.

Husband filed his petition for dissolution of marriage on July 25, 1980. A trial was held on March 18 and 19 of 1981 and final judgment was entered on the petition on August 14, 1981.

We find the wife raises four contentions of error, which for the sake of clarity we state as:

1. Did the trial court abuse its discretion in allowing the wife's counsel to withdraw from the case on the morning of the trial?
2. Did the trial court err in denying the wife's motion to reopen the case for the introduction of additional evidence?
3. Did the trial court abuse its discretion in making the property division?
4. Did the trial court abuse its discretion in its award of attorney fees to the husband's counsel?

ISSUE 1:

The wife had been subpoenaed to attend a deposition at 9:00 a.m. on March 18, 1981.

The trial on husband's petition for dissolution was scheduled to begin at 2:00 p.m. on that day. The wife did not appear for the deposition. Her counsel received a message to the effect that the wife was ill, but no verification of such a fact was offered to the court or counsel. Counsel then requested of the court that he be allowed to withdraw from the case. The court granted that motion. Consequently, the wife was without counsel of record on the day trial was to be held.

The court made considerable effort to locate the wife before proceeding to trial. Directory assistance was consulted but did not have a number for her. The friend who had relayed the message to her attorney was telephoned but did not answer. Area hospitals were also called but none had the wife as a patient. When these attempts to contact the wife proved futile, the court proceeded with the trial.

The wife has not addressed in separate arguments what we have denoted as issues 1 and 2. Rather, she argues the combined acts of the trial court in that it granted counsel's request to withdraw *and* denied the subsequent motion to reopen the case constituted a denial of a fair trial. We choose to consider the propriety of the trial court's actions separately in determining whether error occurred.

The wife's attorney orally moved for leave to withdraw on the morning of March 18, 1981. He filed with the court a copy of a letter which he had hand delivered to the wife's residence on March 17. Whether or not she personally accepted the letter is not disclosed by the record. As stated therein, the letter was intended as a memorialization of a telephone conversation which the attorney had with the wife in the morning on March 17. He had advised her that she was under subpoena and thus obligated to appear at the deposition and trial on March 18. He also had warned her that a body attachment for her arrest could be issued if she failed to appear.

We find this excerpt from the letter to be particularly relevant as to whether coun-

sel's withdrawal with leave of court constituted error:

> "May this letter further serve to memorialize the fact that during our telephone conversation, you accused me of removing from your motor vehicle a deed to certain property which I did then, and I do now, categorically deny. Considering your accusation that I have taken your property from you, I advised you I would withdraw my appearance as your counsel in this case, and that you would have to immediately obtain the service of substitute counsel, which counsel should be present with you at the deposition scheduled for Wednesday, March 18, 1981 at 9:00 a.m. and at the trial scheduled for Wednesday, March 18, 1981, and Thursday, March 19, 1981, beginning at 2:00 p.m. on each day."

The wife does not dispute the veracity of these statements.

Thus, the evidence discloses that the wife had accused her counsel of exercising unauthorized control over her property and he had advised her of his intent to withdraw. Counsel could not be expected to continue his representation of the wife after she had, in essence, accused him of theft. The trust and confidence essential to the viability of any attorney-client relationship no longer was present between the wife and her counsel. We believe counsel, by seeking the court's leave to withdraw, was pursuing a course of action that was reasonable under the circumstances.

■ We are cognizant of the fact that counsel gave the wife only one day's notice of his intent to withdraw.[1] On such short notice the wife could have been under substantial time constraints in employing new

counsel before trial commenced. However, at no point in the proceedings did the wife appear and request a continuance or otherwise seek relief from the court. Counsel gave notice of intent to withdraw on March 17. On the morning of March 18 the court granted counsel leave to withdraw. In the afternoon of March 18 the court proceeded with the scheduled trial on the dissolution without an appearance being made on behalf of the wife. She argues error occurred when the court allowed counsel to withdraw under these circumstances. We do not agree.

In essence, the wife is asserting that *but for* the withdrawal of her counsel, she would have received a fair trial. True, the wife was without legal representation when the court proceeded with trial, but absence of counsel does not necessarily precipitate reversible error. *See In re Marriage of Robbins* (1976), 171 Ind.App. 509, 358 N.E.2d 153,[2] *overruled on other grounds* (1983), Ind., 446 N.E.2d 332 (1983).

The wife has not demonstrated to this court that she made a reasonable effort to obtain new counsel for the trial date. Further, the wife did not make an appearance at trial, either to plead her case or to seek a continuance. Notwithstanding her apparent lack of diligence, she contends a "mental infirmity" should have excused her failure to obtain counsel or personally appear at trial to defend the action. In so arguing she cites *Duncan v. Binford* (1972), 151 Ind. App. 199, 278 N.E.2d 591. In *Duncan* we did note:

> "[P]hysical or mental infirmity will excuse the party's failure to defend the action where such infirmity prevented

1. The wife makes reference to a court rule requiring 10 days' notice before withdrawal may be granted. The wife has not developed any argument with regard to any noncompliance with this rule and we consider the issue waived.

2. In *Robbins* we found the trial court did not abuse its discretion in refusing to vacate a judgment where appellant's attorney had failed to appear at trial. Counsel therein had notified the judge's secretary about a continuance and she had allegedly replied a continuance "would

be acceptable to the court." Counsel did not move for a continuance as required by Indiana Rules of Procedure, Trial Rule 53.4. Trial was commenced on the scheduled date in the absence of appellant's counsel. We found no error since appellant's counsel had failed to comply with TR 53.4. Without a showing of surprise, mistake or excusable neglect the fact that counsel failed to appear at trial did not entitle the appellant to a vacation of the judgment.

the party's timely appearance in court and prevented the party from engaging counsel to either appear in the absent party's behalf or to request a continuance until the party is able to appear."

278 N.E.2d at 597.

The wife has not put forth any evidence which substantiates her allegations of infirmity. She sent a message through a friend that she was ill on the day of trial, but this second hand communication alone does not necessarily establish grounds for relief. Furthermore, the wife had demonstrated considerable lack of regard for the court in the proceedings leading up to the trial. During the period between the petition and trial the wife's behavior was uncooperative and, at times, intransigent. She refused to submit to the husband's request for a deposition. When ordered to do so by the court she failed to appear. Consequently, a body attachment for her arrest was issued and she was taken into custody by the sheriff. The court ordered the wife held for four days in order that her deposition could be taken. The sheriff also escorted the wife to a bank where she opened a safety deposit box. The box contained $55,044 in cash which the wife had drawn from various financial accounts after the parties separated. The sheriff took the contents of the box into his custody and the body attachment was vacated. However, the wife was still under subpoena to appear at a deposition scheduled for the morning of March 18. As detailed above, the wife failed to appear for that deposition or the trial.

We find in the above facts evidence that the wife held the entire proceedings in disdain. She refused to comply with court orders; orders made necessary by her obstinate behavior in general. She took obvious efforts to conceal the cash assets in her possession. Thus, complex and expensive discovery was required to ferret out the assets held by her. She unnecessarily, and certainly unjustifiably, burdened the already heavily taxed judicial system.

We need not countenance such behavior and are not sympathetic toward a party who fails to make an appearance at trial, yet asserts error because the record does not contain what she asserts to be critical evidence. Each party is responsible for his or her own representation, whether they engage legal counsel or appear on their own behalf. In the civil context the defendant is so informed at the initiation of a suit by the terms of the summons. The wife had five counsel of record between the filing of the dissolution petition and the trial. The record does not disclose why, but each was granted leave to withdraw. Nevertheless, by having such a multitude of counsel available during the course of the proceedings, the wife was surely apprised of the consequences of not being represented at an adversarial legal proceeding.

The trial court's granting of counsel's motion to withdraw is subject to review only for an abuse of discretion. We believe the evidence viewed in a light most favorable to the judgment amply supports the trial court. The wife's recalcitrant behavior in general and her accusations of theft in particular precipitated her counsel's motion for leave to withdraw before trial commenced.

An attorney who is severing his relationship with a client has a professional obligation to protect the interests of the client. *Ashbrook v. Ashbrook* (1977), 174 Ind.App. 134, 366 N.E.2d 667. As our Code of Professional Responsibility requires:

"Even when he justifiably withdraws, a lawyer should protect the welfare of his client by giving due notice of his withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm."

Code of Professional Responsibility, Ethical Consideration 2–32.

However, in light of the circumstances counsel did give *due* notice and adequately forewarned the wife she would be without his representation on the trial date. Being on such notice, the wife was sufficiently

apprised of the fact that she would not have representation at trial. Concomitantly, she should have been aware of the consequences of not defending the action or at least seeking a continuance. Clearly, the trial court was under no obligation to protect rights which the wife had voluntarily chosen to forego by not appearing.

The trial court did not err in granting counsel's motion to withdraw.

ISSUE 2:

We next consider whether the trial court erred in denying the wife's motion to reopen the case for the introduction of additional evidence.

New counsel entered an appearance for the wife on April 13, 1981. He subsequently filed a motion to reopen the case for introduction of additional evidence, along with a supporting affidavit.[3] Other than the assertion of counsel's "belief," no evidence of the wife's alleged emotional state was presented to the court. The trial court denied the motion when judgment was entered on August 14, 1981.

▆▆▆ Whether a case shall be reopened for the introduction of additional evidence lies within that realm of discretion vested in the trial court. *Utopia Coach Corp. v. Weatherwax* (1978), 177 Ind.App. 321, 379 N.E.2d 518; *Pruess v. McWilliams* (1967), 141 Ind. App. 602, 230 N.E.2d 789.

In *Pruess* the appellant's counsel did not introduce particular evidence in his case-in-chief because he "had hoped to get this evidence admitted on cross-examination of defendant-appellee." 230 N.E.2d at 791. The appellant moved to reopen the case after he failed to get the evidence in. The trial court denied the motion. We affirmed such an exercise of discretion because the appellant's counsel had deliberately chosen not to introduce the evidence in his case-in-chief. In so deciding, we stated:

"The term 'discretion' implies the absence of a hard and fast rule or a mandatory procedure regardless of varying circumstances. 'Discretion' of a court is a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable. Thus, judicial action which involves discretion is final and cannot be set aside on appeal except when there is an abuse of discretion."

230 N.E.2d at 792.

▆▆▆ The facts herein are of a similar vein. The proffered evidence put forth in the wife's motion was not of record due to her failure to defend the action. The wife has not persuaded us that her failure to appear was anything other than an intentional and voluntary decision on her part. The appellant in *Pruess* bore the evidentiary consequences of his deliberate acts, and we find no reason not to impose upon the wife herein the same responsibility for her actions.

Each party should be afforded an opportunity to present evidence on matters in

---

**3.** In the affidavit counsel made these averments:

"4. That it is his belief that at the time of trial Respondent was incapable of appreciating the necessity for her appearance at said trial, and was in an emotional state which precluded Respondent from appearing at the trial and giving testimony on her own behalf.

5. That certain additional evidence necessary for a just resolution of this matter should be made a part of the trial record. Such additional evidence being as follows:

a. An accurate fair market value of certain real estate located at 200 North Michigan Street in Argos, Indiana.

b. Testimony concerning Respondent's contribution as a homemaker during the course of the marital relationship.

c. Testimony relative to Respondent's ability to obtain gainful employment or otherwise provide for herself following dissolution of the marriage.

d. Testimony concerning the fair market value of certain antiques acquired during the course of the marital relationship which are in the possession of the Petitioner.

e. Testimony concerning the sum of Ten Thousand Dollars ($10,000.00) which Respondent indicates she brought into the marital relationship by virtue of a life insurance policy on her former husband.

6. That given the opportunity to present the aforementioned items of evidence into the record Respondent will be able to furnish this Court with such evidence, and provide this Court with a full and complete record on which to base a final dissolution decree."

contention. *See Utopia Coach Corporation v. Weatherwax, supra.* However, a party cannot later show error if she fails to avail herself of the opportunity to introduce evidence.

A trial was held on the petition for dissolution. If the wife had appeared she could have proffered for admission that evidence which she later moved to introduce. As it stands, the record contains sufficient evidence upon which a reasonable and just property division could be made. The purported evidence enumerated in the affidavit is *not* of a nature which leads us to conclude the trial court abused its discretion in making the property division without that evidence being of record. Therefore, the trial court did not abuse its discretion in denying the motion to reopen the case for the introduction of additional evidence.

We pause to clarify a point raised by the wife's contentions. She analogizes her claim to one for relief from a default judgment. The trial court so denoted the action. We call the parties' attention to *In re Marriage of Robbins* (1976), 171 Ind.App. 509, 358 N.E.2d 153, 154. The husband failed to appear for the trial on the merits. A judgment dissolving the marriage was entered. The husband then filed a motion with the trial court to vacate the judgment. We noted in a footnote:

> "When a trial court proceeds to hear a divorce action on the merits even though one of the parties is absent, the resulting judgment is on the merits. The judgment is not a default judgment. Indiana Rules of Procedure, Trial Rule 55(B) would not be applicable."

358 N.E.2d at 154, n. 1. *See also Aetna Securities Company v. Sickels* (1949), 120 Ind.App. 300, 88 N.E.2d 789.[4]

The present action is one on the merits and should not be confused with a default judgment.

ISSUE 3:

We interpret the wife's challenge of the property division to be twofold. She asserts the evidence on the value of the residence in Argos was not sufficient to enable the trial court to make a reasonable and just distribution of the parties' marital assets. Also, she contends the judgment as it stands was disproportionately in favor of the husband.

Considerable discussion has been expended on the issue of what constitutes adequate valuation of record for purposes of making a fair and equitable property division. Two recent cases giving attention to the issue are *Dean v. Dean* (1982), Ind.App., 439 N.E.2d 1378 and *Church v. Church* (1981), Ind.App., 424 N.E.2d 1078.

In *Church* the husband asserted the trial court abused its discretion in distributing certain assets without making a determination as to their value. We reviewed the law in Indiana and noted cases [5] which hold it is an abuse of discretion for a trial court to distribute property without apprising itself of the value of the property.

However, in *Church* we concluded the burden of valuation should be upon the parties, not the trial court:

> "[W]e now recognize that any party who fails to introduce evidence as to the specific value of the marital property at the dissolution hearing is estopped from appealing the distribution on the ground of trial court abuse of discretion based on that absence of evidence. This rule places the burden of producing evidence as to the value of the marital property where it belongs—on the parties, rather than on the trial court. It is appropriate to require the parties to bear the burden of gathering and presenting to the trial court evidence as to the value of the marital property rather than to place

---

4. Here only the attorney withdrew his appearance, which is not the equivalent of withdrawing the appearance of the party. *See State ex rel. Durham v. Marion Cir. Ct.* (1959), 240 Ind. 132, 162 N.E.2d 505; *Kelly v. Bank of Reynolds* (1976), 171 Ind.App. 515, 358 N.E.2d 146.

5. *See Howland v. Howland* (1975), 166 Ind. App. 572, 337 N.E.2d 555; *Hardiman v. Hardiman* (1972), 152 Ind.App. 675, 284 N.E.2d 820.

upon the trial court the risk of reversal if it distributes the marital property without specific evidence of value. The proper role of a court in dividing property pursuant to a dissolution is to review carefully all the evidence and then to divide the property based on a consideration of the factors listed in IC 31–1–11.5–11(b) (Burns Code Ed., Repl.1980).

\* \* \* \* \* \*

In sum, we do no more than place the burden of producing evidence as to the value of the marital property squarely where it belongs—on the shoulders of the parties and their attorneys. After all, the general rule is that parties to a legal proceeding are bound by the evidence they introduce at trial and they are not allowed a second chance if they fail to introduce crucial evidence. We see no reason to make dissolution proceedings an exception to this rule."

424 N.E.2d at 1081–82.

The husband received the real estate in Argos, Indiana, a 1969 Plymouth, all funds at Tower Federal Savings and Loan Association, various articles of personal property, and cash of $40,150.57.

The wife was granted the house at 1323 Longfellow Street, a 1975 Plymouth, a diamond ring, personal property in her possession, and cash of $20,293.73.

The husband testified the house in Argos, Indiana was acquired for $23,500 and that an additional $5,000 was spent to make it habitable. He assessed its fair market value at $28,000. The court set the house off to him in kind. We note the husband had sold his residence in 1977 for $19,000, and during the marriage was living in the wife's house at Longfellow Drive. We cannot say that the court, by awarding the Argos property to the husband and the Longfellow Drive residence to the wife, clearly failed to achieve a just and reasonable division of the parties' real property.

The trial court did not place values on particular items of personal property. Rather, the division was intended to return to each party those possessions which he or she had owned at the time they were married and to account for the purchases made by the husband during the marriage.

No evidence was presented challenging the accuracy of the husband's valuations or his statements relating to who brought what possessions into the marriage. Based on the evidence adduced at trial the court made a just and reasonable distribution of the parties' property. As we have often stated, our review of a property distribution is limited, as it should be. *See, e.g., Dean v. Dean* (1982), Ind.App., 439 N.E.2d 1378.

The wife had the burden of placing values into evidence if she found error in those given by the husband. Having failed to appear, she is now ill positioned to challenge the property distribution, which was made on the basis of credible evidence given by the husband.

The wife also asserts the trial court failed to consider her contributions as a homemaker, financial manager and her earning power in making the division of property. We do not agree. The trial court in its memorandum in support of the judgment discussed these factors, and we believe the court followed the dictates of IC 31–1–11.5–11 in arriving at a just and reasonable division of the parties' real and personal property.

■ Finally, the wife alleges the trial court erred in awarding over 75% of the marital assets to the husband. We find no error in the overall distribution of the property. The evidence most favorable to the division discloses that the parties' income was from the husband's wages, retirement benefits, and an inheritance. The wife was not employed during the marriage. The trial court awarded to the wife the house on Longfellow Drive, a 1975 Plymouth automobile purchased during the marriage, and more than $20,000 in cash. Under IC 31–1–11.5–11 the "words 'just and reasonable' simply mean that there must be a rational basis for the trial court's disposition." *Dean, supra,* 439 N.E.2d at 1382. Such a rational basis does exist in the present action. Accordingly, the court was within its discretion in so dividing the marital assets.

**ISSUE 4:**

The trial court ordered the wife to pay $10,288.20 to husband's counsel for services rendered pursuant to the dissolution proceedings. The wife contends the trial court abused its discretion in so doing because the fees assessed against her were more than one half the amount awarded to her, and because they were beyond the $60 per hour which the husband had agreed to pay his counsel.

The husband argues the attorney fees awarded to his counsel were proper, primarily because of the extraordinary effort to which counsel had to resort to ascertain and discover assets which the wife had concealed.

The trial court gave a thorough explanation as to why it awarded over $10,000 in attorney fees against the wife:

"As a matter prefatory to the discussion of the award of attorney fees, it should first be noted that, while the 'History of the Case' portion of the Memorandum makes extensive reference to the evasiveness of the respondent during the course of these proceedings and the covert manner in which she handled the parties' funds, the 'Division of Assets' section is largely silent to this issue. To the extent her conduct is discussed with reference to the division of assets, its impact is minimized. This is as it should be; IND.CODE Section 31–1–11.5–11(b) leaves no room for consideration, in dividing the parties' assets, of the cooperation by a party in the proceedings which lead to the division.

Nor is the Court entirely without sympathy for the respondent in this case. Her actions are consistent with a person who is frightened by the prospective loss of those things which give her security. Such motivation would not permit the Court to condone her actions, but would permit the Court to view her as something less than malevolent. This constitutes another reason why a party's conduct during the litigation, short of dissipation of assets, should not be considered in division of the assets, and that no punitive division should be visited upon a party for that conduct.

Her conduct during these proceedings has, however, dramatically increased the legal expenses in connection with this proceeding. Because she would not disclose her financial holdings to petitioner's counsel, because her course of conduct prior to the separation prevented petitioner from knowing his own financial holdings, and because her conduct at the time of separation effectively 'erased her tracks,' it has been necessary for petitioner's counsel to proceed along lines which are highly extraordinary in a domestic relations case: requesting and delivering countless orders to produce directed to multitudinous banking institutions within the area; repeated discovery attempts culminating in examination of a custodial deponent; a remarkable eleventh-hour excursion to Wabash, Indiana, to rummage through a theretofore undisclosed safety deposit box; and several trips to the courtroom occasioned by the respondent's conduct with respect to both the court and her own counsel.

It is well settled that, although a party's obstreperousness during the pretrial proceedings may not be considered in arriving at a just and reasonable division of the marital property, a party may be held to answer for legal expenses incurred by the adversary as a result of that obstreperousness. *See, e.g., Finley v. Finley,* 422 N.E.2d 289 (Ind.App., 4th Dist., 1981); *Finley v. Finley* [174 Ind.App. 362] 367 N.E.2d 1126 (Ind.App., 3rd Dist., 1977).

At trial, petitioner's counsel testified that he had, through the time of trial, expended 147.57 hours on this case, and had incurred $1,200 in out-of-pocket expenses. He estimated that seventy-five to eighty percent of that time had been spent in ascertaining the assets of the parties. Following trial, petitioner's counsel submitted a twenty-page post-trial brief, most of it unhappily single-spaced, and thereafter he filed a four-page response to the respondent's Motion to Reopen and a four-page reply brief.

The Court now takes judicial notice that not less than eight additional hours of counsel's time would have been expended on these post-trial pleadings. *In Re The Marriage of Gray*, 422 N.E.2d 696 (Ind. App.1981).

In his trial testimony, counsel applied an hourly rate of $60.00 to his expended time in arriving at this request for fees. Such an hourly rate appears to the Court to be well below that to which counsel is entitled in view of the actions respondent made necessary in this case. A higher rate is amply justified by counsel's performance of 'services of a far greater variety than are usually involved in a dissolution of marriage case.' *Finley v. Finley*, 422 N.E.2d 289, 293 (Ind.App., 4th Dist., 1981). The trial court is not limited by counsel's testimony in its determination of what a reasonable fee would be; the court may take judicial notice of what a reasonable attorney's fee would be, even absent any evidence in the record or in the face of conflicting evidence, because the trial court is familiar with the action and the amount and nature of the work required. *In Re The Marriage of Gray, supra,* at 703; *Geberin v. Geberin*, 172 Ind.App. 255, 360 N.E.2d 41, 47 (1977).

"Petitioner's counsel's performance in this cause was in keeping with the highest traditions of the practice of law. Counsel had to have been aware that of every dollar he uncovered in his resolute search, some portion of that dollar would go to his adversary, who was bent on preventing its discovery. Counsel ably performed the function of an officer of the Court, that he might bring before the Court the full panoply of the parties' assets for the Court to divide.

Under most circumstances, an hourly rate of $60.00 might be reasonable; under other circumstances, it might be excessive. Under these circumstances it is inadequate. The Court is constrained in the award of fees by the respondent's ability to pay, *DeLong v. DeLong,* 161 Ind.App. 275, 315 N.E.2d 412 (1975); *Brown v. Brown,* 157 Ind.App. 672, 301

N.E.2d 400 (1973), and in light of all of these considerations, concludes that the respondent should pay petitioner's counsel for eighty percent of his time, or 124.376 hours, at an hourly rate of $75.00 for a total of $9,328.20, and in addition thereto pay for eighty percent of his out-of-pocket expenses, or $960.00. Accordingly, the respondent is ordered to pay to petitioner's counsel of record the sum of $10,288.20 as her share of the petitioner's legal fees."

By statute the trial court is empowered to award attorney fees in a dissolution action. IC 31–1–11.5–16 states:

"Costs.—Attorney's fees.—The court from time to time may order a party to pay a *reasonable amount* for the cost to the other party of maintaining or defending any proceeding under this chapter *and for attorney's fees,* including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name." (Emphasis Added)

 The statute affords the trial court broad discretion in assessing attorney fees. *In re Marriage of Gray* (1981), Ind.App., 422 N.E.2d 696, 703.

Through the course of the proceedings the wife refused to disclose the whereabouts of the parties' assets, thus necessitating complex discovery, and the expense thereof, on the part of the husband. The wife's "obstreperous" and uncooperative behavior caused considerable expenditure of time and resources and it is reasonable that she should bear the responsibility for such costs.

 The wife complains the fees should not be assessed at a rate greater than $60 per hour, the rate initially agreed to between the husband and his counsel. We do not agree. Reasonable fees are not necessarily determined by the terms of the attorney-client contract of employment. *Burkhart v. Burkhart* (1976), 169 Ind.App.

588, 349 N.E.2d 707; *DeLong v. DeLong* (1974), 161 Ind.App. 275, 315 N.E.2d 412.

We found in *Finley v. Finley* (1981), Ind. App., 422 N.E.2d 289:

"The award of reasonable attorneys' fees under IC 31–1–11.5–16 is left to the broad discretion of the trial court, *e.g., Waitt v. Waitt* (1977), 172 Ind.App. 357, 360 N.E.2d 268. In determining what sum, if any, is reasonable the trial court is not limited to considering only an hourly rate.

'Although an hourly rate is a factor to be considered in assessing attorney fees, it is not the sole factor. Traditionally, the size of the marital estate, the length of time necessary to obtain the desired result, and the possibility of appeal are other aspects to be weighed. *Burkhart v. Burkhart* (1976), [169 Ind. App. 588], 349 N.E.2d 707.'

*Johnson v. Johnson* (1979), Ind.App., 389 N.E.2d 719, 722. In addition, in determining reasonable fees in other types of cases we have allowed consideration of quality of services. *Matter of Estate of Kingseed* (1980), Ind.App., 413 N.E.2d 917 *[Transfer Den.]* and difficulty of issues, *First Valley Bank v. First Savings and Loan Association of Central Indiana* (1980), Ind.App., 412 N.E.2d 1237."

422 N.E.2d at 292. Additionally, "factors may be present which weigh in favor of an award in excess of the customary hourly rate." *Finley, supra,* 422 N.E.2d at 293. Such is the situation in the present case. Considerable expertise was required to ferret out the assets which the wife had attempted to hide away. Due to the complexity of the matter, most of which was caused by the recalcitrant behavior of the wife, the trial court was within its discretion in awarding the $10,288 fee based on an hourly rate of $75 per hour. We are fully in accord with the trial court's reasoning and judgment on this issue.

For the foregoing reasons we affirm.

HOFFMAN, P.J., concurs.

STATON, J., concurs in result and files separate opinion.

STATON, Judge, concurring in result.

I concur in result. The trial court abused its discretion when it granted the motion to withdraw. Its own rules provided that the motion would not be granted unless ten days notice had been given. Here, the trial court granted the motion the day after it had been filed and the morning before a trial was to commence on the merits. This is an abuse of discretion. Unfortunately, this abuse of discretion is waived in this appeal.