**Devota DEAN, Respondent-Appellant,**

v.

**Lawrence W. DEAN, Petitioner-Appellee.**

**No. 1–382A69.**

Court of Appeals of Indiana,
First District.

Sept. 30, 1982.

adoption would be in the best interests of the   child, the court may then grant the petition.

Stephen R. Heimann, Goltra & Heimann, Columbus, for respondent-appellant.

Larry L. Eaton, Eaton & Taylor, Versailles, for petitioner-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF CASE

DeVota Dean, Respondent, appeals that part of a Dissolution of Marriage Decree dealing with the property settlement. We affirm with modification.

## FACTS

DeVota and Lawrence W. (Larry) Dean, Petitioner, were married November 20, 1965, and four children were born of the marriage. Cross-petitions for Dissolution of the Marriage were filed by the parties and after a two-day trial, July 16 and 17, 1981, the trial court granted the dissolution but took the matter of the division of the property under advisement. Pursuant to Indiana Rules of Procedure, Trial Rule 52, DeVota requested that the trial court make specific findings of fact. The trial court adopted Larry's proposed findings of fact and conclusions of law which read as follows:

"Comes [sic] now the parties in person and by counsel and this matter is submitted to the Court for trial, finding and judgment. The Court having considered the evidence herein and the argument of counsel, now makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The parties were bona fide residents of Ripley County, Indiana, for more than six (6) months prior to November 12, 1980.

2. There were born of the marriage four (4) children, namely, Angela Rena, Rachele Lynn, Nathan Robert and Basil Albert, all of whom are under the age of eighteen (18) years.

3. The marriage of the parties is irretrievably broken.

4. The petitioner inherited the following described property from his father, Robert Dean, during this marriage:

a. 3.255 acres together with an old house and some outbuildings.

b. A ⅑ interest in the business then known as Napoleon Lumber Company together with certain farmland, antique autos, and bank stock, subsequently formed into the corporation known as Napoleon Lumber Company of which the Petitioner owns 25 shares of the common capital representing 25% of the outstanding capital of the corporation.

5. From the business interests derived from the Napoleon Lumber Company Petitioner together with two brothers formed the Napoleon Hardwood, Inc. in which the Petitioner owns thirty-three (33) shares of common capital representing ⅓ of the outstanding shares.

6. From the business assets known as the Napoleon Lumber Company, Petitioner and two brothers formed a partnership known as Dean Brothers Rentals in which the Petitioner owns a ⅓ interest.

7. The parties have accumulated household goods and personal property including four motor vehicles.

8. That the Petitioner and Respondent constructed a home in 1974 on the property inherited by the Petitioner from his father which is subject to the lien of a mortgage in favor of the Napoleon State Bank dated December 28, 1974, in the principal amount of $30,000.00 having an unpaid balance as of this date of approximately $25,000.00.

9. That Respondent should have the care and custody of the minor children of the parties, and Petitioner should pay a reasonable sum for the support of said children.

10. That the Petitioner should be entitled to visitation each weekend and at reasonable times upon at least twenty-four (24) hours prior notice.

## CONCLUSIONS OF LAW

1. That the marriage of the parties should be dissolved.

2. That the property of the parties should be divided as follows:

a. To Petitioner:

i. 25 shares of Napoleon Lumber Company stock.

ii. 33 shares of Napoleon Hardwood, Inc. stock.

iii. ⅓ interest of Dean Bros. Rentals partnership.

iv. 287 shares of the Napoleon State Bank stock.

v. Cash value of life insurance.

vi. 1980 Federal and State tax refunds.

vii. Personal property including motor vehicles in his possession.

viii. Interest in antique autos.

b. To Respondent:

i. Family residence together with all improvements; provided, that Petitioner should pay the mortgage indebtedness against said property.

ii. Household goods and personal property located at the family residence.

iii. The 1977 Chrysler automobile.

iv. A judgment against the Petitioner in the sum of $97,500.00, payable in installments of $9,750.00 each, the first payment being due December 1, 1981 and nine subsequent payments due on the first day of December thereafter of each succeeding year, with interest on the unpaid balance of 12% per annum; provided, Petitioner may prepay said judgment at any time without penalty.

3. That custody of the minor children should be with the Respondent and the Petitioner should have the right to visit with said children at reasonable times and places to be agreed upon by the parties and upon 24 hours prior notice.

4. That Petitioner should pay support for said minor children in the sum of Fifty Dollars ($50.00) per child per week, said payments to be made into the office of the Clerk of this Court. In addition, Petitioner should pay One Hundred Dollars ($100.00) per school age child (kindergarten through college) per year on or before August 15th of each year into the office of the Clerk of this Court, beginning in 1982.

5. That the Petitioner should maintain health insurance on the minor children and the parties should divide equally any unpaid medical, dental, orthodontic, pharmaceutical, optical and hospital expenses.

6. That the Petitioner should be entitled to claim the parties' minor children as dependents for income tax exemption purposes.

7. That Petitioner should pay Respondent's legal expenses in the sum of Five Thousand Dollars ($5,000.00), within sixty days from this date.

So ORDERED this 9th day of October, 1981."

Record at 324–327.

## ISSUES

DeVota presents these issues for our review:

"1. Whether the trial court committed reversible error by failing to set forth monetary values of the marital assets in its findings of facts and conclusions of law?

2. Whether the trial court committed reversible error by failing to award certain assets of the marriage to either party?

3. Whether the trial court abused its discretion by allowing Phil Banawitz to testify to valuations of three business interests when he was not an expert in that field and had not qualified as an expert?

4. Assuming that the Court valued the three business entities for purposes of property division at the values testified to by Husband's expert witness, whether the trial court abused its discretion in using said valuations since the underlying valuing technique was contrary to the evidence and law in that the technique

a) arbitrarily weighted corporate years earnings,

b) arbitrarily discounted minority interest by sixty-six percent (66%),

c) arbitrarily assigned capitalization rates,

d) was inconsistent in using supporting data, and,

e) did not incorporate goodwill in its computations.

5. Whether the trial court committed reversible error by not dividing the property acquired during the course of the marriage in a just and reasonable manner as mandated by I.C. 31–1–11.5–11 in that it awarded husband two and one-half (2½) times as much property than to wife?"

## DISCUSSION AND DECISION

### Issue One

DeVota argues that the trial court erred and that its judgment with respect to the division of property in this case should be set aside because the court failed to set forth in its findings of fact specific monetary values of all the marital assets. DeVota did, pursuant to Trial Rule 52 of the Indiana Rules of Procedure, request in writing prior to trial that the court enter special findings of fact and reminded the trial court of this request prior to the presentation of evidence. When the court asked why counsel was requesting special findings, DeVota's counsel explained,

"Your Honor I want to be able to clearly delin[e]ate the facts which the Court is going to base and render its decision on are the facts concerning the valuation of some of the properties that are involved. That is basically what I'm most concerned about."

Record at 337–38. In a round about way counsel appears to be limiting his request for special findings on the issue of asset valuation. Nevertheless, counsel states that DeVota's request for special findings "was not limited in any manner to specified issues." Appellant's Brief at 16. Thus, while it appears DeVota was concerned with the court's valuation of marital assets, she does not argue that she specifically requested the trial court to establish a set value for each asset. Now, however, she contends that without a specific value attributed to each asset it is impossible to determine if the trial court made a just and reasonable distribution of the marital assets under Indiana Code Section 31–1–11.5–11. We disagree.

■ In essence a trial court's judgment will be set aside by this court only when it is contrary either to law or to the facts of the case. In this case DeVota seems to complain that the judgment is contrary to law because the facts found by the court are inadequate as special findings. Special findings of fact may be distinguished from general findings in favor of one party or the other. *See Hunter v. Milhous*, (1973) 159 Ind.App. 105, 121, 305 N.E.2d 448, 458. Special findings of fact have been said to consist of all the facts necessary to a judgment for the party in whose favor conclusions of law are rendered. *Id.; Salk v. Weinraub*, (1979) Ind., 390 N.E.2d 995, 997. Where special findings are properly requested, parties are entitled to have the court state those ultimate facts upon which it determined the legal rights of the parties. *Stanzione v. Pascevich*, (1982) Ind.App., 431 N.E.2d 847, 849; *Hunter v. Milhaus*. However, the purpose of a trial court's making specific findings is to provide the reviewing court with the legal basis upon which the trial court decided the case. *Miller v. Ortman*, (1956) 235 Ind. 641, 664–65, 136 N.E.2d 17, 31; *In re Marriage of Miles*, (1977) 173 Ind.App. 5, 8, 362 N.E.2d 171, 174, *trans. denied*.

It is important to keep in mind that the outcome of a property disposition in a dissolution of marriage case is different from damages awarded in tort or contract cases. As pointed out by Judge Garrard in *Miles*, 362 N.E.2d at 174, "here, the outcome is not mandated by an established rule of law but, instead, the decision rests within the discretion of the court." Thus we may reverse only "if the decision is not consistent with the findings and conclusions or if the reasons given are insufficient as a matter of law to justify the manner in which the court exercised its discretion." *Id.* Reversal is not merited when only a technical deficiency appears in the findings, *Stanzione v. Pascevich*, and Trial Rule 52 permits a judgment based on special findings to be set aside only when clearly erroneous.

■ This court has consistently held that it will consider the findings as a whole and construe them liberally in favor of the judgment, *K.B. v. S.B.*, (1981) Ind.App., 415 N.E.2d 749, 754; *Miles*, and that it will indulge every presumption in favor of the trial court's disposition of marital assets. *In re Marriage of Church*, (1981) Ind.App., 424 N.E.2d 1078, 1080, *trans. denied; In re Marriage of Gray*, (1981) Ind.App., 422 N.E.2d 696, 701; *Wireman v. Wireman*, (1976) 168 Ind.App. 295, 301, 343 N.E.2d

292, 296, *trans. denied.* A trial court has broad discretion in dividing property in a dissolution of marriage proceedings, and we review that division only for an abuse of discretion. *In re Marriage of Hirsch,* (1979) Ind.App., 385 N.E.2d 193, 196. We do not judge the credibility of witnesses or reweigh their testimony: those are the functions of the trial court. *Id.* The mere fact that a different disposition of the property might have been effected under the same facts and circumstances will not permit us to substitute our judgment for that of the trial court. *Morphew v. Morphew,* (1981) Ind.App., 419 N.E.2d 770, 779. Indiana Code Section 31–1–11.5–11 requires that the trial court divide the property of the marriage "in a just and reasonable manner," which does not mean equally or even relatively equally. *In re Osborne,* (1977) 174 Ind.App. 599, 605, 369 N.E.2d 653, 656, *trans. denied. Accord, Cunningham v. Cunningham,* (1982) Ind.App., 430 N.E.2d 809; *Johnson v. Johnson,* (1979) Ind.App., 389 N.E.2d 719; *Dahlin v. Dahlin,* (1979) Ind. App., 397 N.E.2d 606; *In re Dougherty,* (1978) Ind.App., 371 N.E.2d 1328; *Libunao v. Libunao,* (1979) Ind.App., 388 N.E.2d 574. In the context of this statute the words "just and reasonable" simply mean that there must be a rational basis for the trial court's disposition. *Osborne.* Moreover, because the purpose of specific findings is to aid this court in its review of the trial court's judgment, we shall not deem those findings inadequate or erroneous unless they preclude our finding a rational basis for the trial court's disposition under the facts and circumstances before the court.

■ DeVota has cited us no case in which this court has found that a trial court has abused its discretion in fashioning a property settlement simply because it failed to assign a specific value to each of the marital assets before distribution. It is true that reviewing courts have found an abuse of discretion where the trial court ascribed a value to property it distributed when there was no evidence as to its value in the record, *e.g., Shula v. Shula,* (1956) 235 Ind. 210, 132 N.E.2d 612, or where the trial court ordered a property division without know-

ing the value of the property. *E.g., Howland v. Howland,* (1975) 166 Ind.App. 572, 337 N.E.2d 555; *Hardiman v. Hardiman,* (1972) 152 Ind.App. 675, 284 N.E.2d 820; *Snyder v. Snyder,* (1964) 137 Ind.App. 72, 198 N.E.2d 8, *trans. denied,* 246 Ind. 292, 205 N.E.2d 159 (1965). It is also true in this case that appellate review could have been facilitated by the trial court's assigning a monetary value to each of the marital assets. DeVota states that the trial court adopted Larry's findings as its own; it would be reasonable to assume, therefore, that the trial court accepted his rather than her evidence as to the value of the assets in dispute, *viz.,* the value of the businesses, residence, and personal property in his possession. However, Indiana case law does not require that a trial court establish the value of each marital asset before distribution. Perhaps the general rule is best summed up in Judge Robertson's words: "The specific value of each marital asset need not be established so long as the trial court is sufficiently apprised of the approximately [sic] gross value of the marital estate." *Libunao,* 388 N.E.2d at 576. *Accord, Church; In re Marriage of Patus,* (1978) Ind.App., 372 N.E.2d 493, *trans. denied; Geberin v. Geberin,* (1977) 172 Ind.App. 255, 360 N.E.2d 41. To hold otherwise would place an intolerable burden on trial courts, whose trial dockets are swamped with dissolution cases, each of which involves a property disposition. *See Cunningham.*

■ The burden of proving the value of marital assets is, and should be, on the parties to the dissolution. *Church.* It is true that Trial Rule 52 provides that a court may request the parties to submit proposed findings and that the trial court's verbatim adoption of one party's proposed findings is not error. *Indiana Industries, Inc. v. Wedge Products, Inc.,* (1982) Ind.App., 430 N.E.2d 419, 422, *trans. den.* Nevertheless, when a party prepares such findings, he should take great care that such findings are sufficient to form a proper factual basis for the ultimate conclusions of the court, *Desch v. United States,* (7th Cir. 1951) 186 F.2d 623, 626, and the court should remem-

ber that when it signs one party's findings, it ultimately is responsible for their correctness. *Indiana Tri-City Plaza Bowl, Inc. v. Glueck Estate,* (1981) Ind.App., 422 N.E.2d 670, 674, *trans. denied.* As we pointed out above, judicial review could have been facilitated in this case by the attachment of specific values to each of the marital assets distributed. It is tempting, therefore, to this court to remand for entry of such findings since the findings before us are, at best, minimal. Nevertheless, in the interests of judicial economy and prompt disposition of cases, we shall not succumb to that temptation. The record before us discloses ample evidence and reasonable inferences which serve as a rational basis to support the findings and conclusions of the trial court. DeVota received the family residence, free and clear of the mortgage which Larry agreed to assume. She received all the furnishings for the house, including her own personal property, an automobile, and a judgment against Larry for $97,500. Larry received his personal property, including three motor vehicles and a ⅑ interest in antique automobiles belonging originally to his father; undisputed cash values of a life insurance policy worth $2,800; 1980 tax refunds worth $8,726.42; and bank stock worth $14,350; plus the disputed values of his minority interests in three family businesses. The evidence was clear that Larry had inherited the bulk of the businesses involved and that he, not his wife, was the moving force in those businesses. In fact, DeVota had spent only a very little time working in one business and admittedly devoted most of her time and energies to caring for the parties' children. DeVota contends that the net value of the marital property was $715,371.94 while Larry valued it at $235,440.19. Both parties agree that DeVota received approximately $185,740 in assets. We look only to the evidence most favorable to the judgment, and therefore conclude that she received roughly half of the net estate. We find no abuse of discretion by the trial court in its distribution of marital assets in this case: the division was not against the logic and effect of the facts and circumstances before the court.

## Issue Two

■ DeVota argues that the trial court erred in failing specifically to award to either party notes payable to Larry in the amounts of $42,671.00 from Napoleon Hardwoods, Inc., and of $38,835.44 from Napoleon Lumber Company, Inc. Testimony revealed that these notes represented dividends from the corporations which were not paid out and which constituted operating capital of the businesses. DeVota's own expert witness treated them as principal in valuing the businesses. She should not be heard now to complain that they are separate assets.

■ We agree with DeVota that Indiana Code Section 31–1–11.5–11 mandates the trial court to divide all the marital property of the spouses in order that all property rights may be put to rest in the decree. *See Hicks v. Fielman,* (1981) Ind. App., 421 N.E.2d 716, 720; *In re Marriage of Dreflak,* (1979) Ind.App., 393 N.E.2d 773, 776. In the instant case we find that the trial court's failure to mention these notes is harmless error at most since they were obviously considered part of the interests in the family businesses awarded to Larry and payable solely to him. Failure to spell that out specifically in the decree did not substantially harm or prejudice any of DeVota's rights. *See* Indiana Rules of Procedure, Trial Rule 61; *Cornett v. Cornett,* (1980) Ind.App., 412 N.E.2d 1232, 1236, *trans. denied.* In order that there be no mistake, however, under our authority set out in Appellate Rule 15(N) we hereby order the trial court to modify its decree to the effect the notes are awarded to Larry.

## Issue Three

DeVota asserts that the trial court erred in permitting Larry's expert witness, Phil Banawitz, to testify about the value of the closely held corporations involved here, specifically objecting to the method he used in valuing a minority interest therein. She contends that the witness was not qualified to testify to these matters.

We note first that a trial court has broad discretion in the qualification of an expert witness and that we disturb that determination only upon a clear showing of abuse. *Davis v. Schneider*, (1979) Ind.App., 395 N.E.2d 283, 290. In this case the witness's qualifications were well known to the trial judge, and Banawitz testified that he had made other such evaluations of businesses in the community. We find no abuse by the court in giving whatever weight it gave to Banawitz's testimony. Second, we point out that although DeVota objected to Banawitz's being permitted to testify to the valuation of the closely held corporations, she did not object specifically to his testimony as to the values thereof. Failure to make a timely objection to the testimony complained of waives any error with respect thereto. *Dale v. Trent,* (1970) 146 Ind.App. 412, 425–26, 256 N.E.2d 402, 411, *trans. denied.* Furthermore, even where an objection to testimony is made and sustained, waiver of any error will occur if no motion is made to strike that testimony. *Id.; Central Indiana Carpenters Welfare Fund v. Ellis,* (1980) Ind.App., 412 N.E.2d 865, 867. "A party may not sit by and let prejudicial or improper evidence be admitted without objection and then, when an adverse judgment is rendered against him, complain that he was harmed by the admission of the evidence." *Dale v. Trent,* 146 Ind.App. at 426, 256 N.E.2d at 411. In the instant case there was neither an objection nor a motion to strike Banawitz's testimony. We find no merit to DeVota's alleged errors with respect to Banawitz's testimony.

*Issues Four and Five*

DeVota fails to present cogent argument or cite any authorities on these points, stating that they are not yet ripe for review because the trial court failed to place specific values on the marital assets distributed. Failure to present cogent argument or to cite pertinent authority on an issue results in waiver on appeal. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7). These issues are waived.

Trial court's judgment affirmed as modified.

NEAL and ROBERTSON, JJ., concur.