CHARLES ASHBROOK *v.* FLORENCE ASHBROOK

[No. 1-477A82. Filed August 29, 1977. Rehearing denied September 15, 1977. Transfer denied December 7, 1977.]

*Jon R. Pactor*, of Indianapolis, for appellant.

*William K. Ewan*, of Lawrenceburg, for appellee.

ROBERTSON, C.J.—Charles Ashbrook appeals from a judgment of the Ripley Circuit Court which denies his petition to have a partition sale modified or set aside, and determines distribution of proceeds from the partition sale. He raises the following issues for review:

(1) Did the trial court err in denying Mr. Ashbrook's motions for continuance?

(2) Did the trial court err in finding that the partition sale was conducted in a manner fair to both parties?

(3) Did the trial court err in awarding fees to the co-commissioners in the partition sale?

(4) Did the trial court err in discharging the surety for the co-commissioners?

(5) Did the trial court err in awarding Mrs. Ashbrook $17,400 as payment for use of her one-half interest in the property?

We reverse and remand with instructions.

A decree of divorce entered by the Dearborn Circuit Court March 8, 1975, terminated the marriage of Florence Ashbrook and Charles Ashbrook. This decree further granted each party an undivided one-half interest in certain real and personal property used for a motel and restaurant operation. Mrs. Ashbrook filed a complaint June 14, 1975, in which she asked, among other things, for an accounting and partition of real estate.

The parties filed stipulations September 19, 1975, which were signed by both parties and their attorneys. The parties stipulated that the property described in the decree of divorce should be sold, that Mr. Hoffman (attorney for Mrs. Ashbrook) and Mr. Hooper (attorney for Mr. Ashbrook) should be appointed co-commissioners, and that the court should later determine the distribution of proceeds.[1]

Mr. Ashbrook purchased the restaurant and motel at public sale April 13, 1976, for the sum of $202,000. The co-commissioners filed two reports of sale, each of which the trial court approved on date of filing (April 20, 1976, and June 10, 1976).

On August 2, 1976, the trial court set October 26, 1976, as the date for hearing to determine distribution of the proceeds of sale. Mr. Ashbrook, by attorney Jon Pactor, filed a petition October 19, 1976, in which he asked the court to modify or set aside the

---

1. The partition sale included three parcels of real estate. This appeal involves only the property on which the motel and restaurant are located.

sale. On that same date, Mr. Ashbrook filed his verified motion for continuance in which he asked the court for a continuance of the October 26, 1976, hearing.[2] This motion was denied October 20, 1976.

On October 26, 1976, both parties and the three attorneys appeared at the hearing. Mr. Hooper immediately asked permission to withdraw, and the trial court granted his request over objection. Mr. Pactor stated that he was not prepared to represent Mr. Ashbrook in the hearing; he again requested a continuance and the trial court again refused to grant a continuance.

After hearing testimony, the trial court denied Mr. Ashbrook's petition to have the sale modified or set aside. After hearing further testimony, the trial court took under advisement the matter of distribution of proceeds from the partition sale. On November 1, 1976, the trial court entered its judgment. The trial court entered an amended judgment November 26, 1976, which included these findings:

"9. That said sale was held by agreement of the parties, without fraud actual or constructive, and *was* fair to both Charles and Florence in all ways, and that Charles thereafter caused his interest in such property to be acquired by 'Master Chef, Inc.', which is a corporation apparently controlled by Charles.

"10. That after the date of the sale and after such sale had been completely closed, Charles became dissatisfied with the price he had bid and paid.

"11. That Charles then discharged his attorney of many years and hired new counsel.

---

2. In his motion filed October 19, 1976, Ashbrook stated these reasons for seeking a continuance:

"1. Charles Ashbrook has retained second counsel who needs to familiarize himself with the case.

"2. Mr. Ashbrook has filed a Petition to Modify or Set Aside the Partition Sale. This petition raises new legal issues which require further research and analysis. Mr. Ashbrook requests that a continuance of at least thirty (30) days be granted in which these problems can be studied and perhaps settled out of court."

"12. That at the time such old counsel was discharged and new counsel hired both Charles and his new counsel knew that the matters in controversy had been set for trial.

"13. That thereafter new counsel filed a Motion for Continuance which was denied.

\* \* \*

"15. That new counsel also filed a petition to set aside or modify the sale, which was denied."

The record presented to this court on appeal contains serious innuendoes of injustice. We firmly believe that this fact is attributable to a misconception by the parties, the attorneys, and the trial court as to the nature of the situation which evolved. To investigate this plight we must first discern the cast of participants.

Florence Ashbrook was plaintiff in the partition suit. Charles Ashbrook was (a) defendant in the partition suit and (b) purchaser at the partition sale. Mr. Hoffman was (a) attorney of record for Mrs. Ashbrook, (b) co-commissioner, and (c) attorney to co-commissioner.[3] Mr. Hooper was (a) attorney or record for Mr. Ashbrook in the partition suit until he withdrew on the morning of the hearing October 26, 1976, (b) co-commissioner, and (c) attorney to co-commissioner.[3] Mr. Pactor was attorney for Charles Ashbrook (purchaser) and became attorney for Charles Ashbrook (defendant) after Mr. Hooper withdrew (or arguably before that time).

Mr. Ashbrook argues that he was denied a fair hearing on his petition to have the sale modified or set aside and on the issue of distribution of proceeds from the partition sale. He filed a written motion for continuance of the October 26, 1976, hearing (by Mr. Pactor); this was denied October 20, 1976. He made oral requests for continuance (by Mr. Pactor) both as to the portion of the hearing on having the sale modified or set aside and as to the portion of the hearing on distribution of proceeds. The trial court steadfastly refused to grant any continuance.

---

3. Mr. Hoffman and Mr. Hooper each petitioned for and received payment for services both as co-commissioner and attorney to co-commissioner.

Trial Rule 53.4 of the Indiana Rules of Procedure provides, in part:

"Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon agreement of all the parties or upon a showing of good cause established by affidavit or other evidence."

We quote from *Loudermilk v. Feld Truck Leasing Co.* (1976), 171 Ind. App. 498, 358 N.E.2d 160, 165:

"The latitude necessary for granting continuances has been rightfully placed in the hands of the trial judge. This court will only reverse for a clear and blatant abuse of that discretion."

When the hearing commenced October 26, 1976, Mr. Hooper presented to the trial court a motion for leave to withdraw his representation of Mr. Ashbrook. We quote from the record:

"Court:      Any objection from anyone if Mr. Hooper withdraws?

"Mr. Pactor: Your Honor I would suggest that in behalf of Mr. Ashbrook I would move for a continuance of this cause.

"Court:      I've already had your Motion for Continuance. *If Mr. Ashbrook wants to change horses in the middle of the stream why that's his business,* and I had the matter set, have no other time to give it. I will overrule your motion.

"Mr. Pactor: To the extent that . . . I myself am not prepared to argue the specific issues that were set for trial today[4] and to the extent that I believe Mr. Hooper was, and to the extent that a continuance will not be granted. By granting Mr. Hooper's motion to withdraw right now would in effect leave Mr. Ashbrook without representation in this cause. And I would have to object for those reasons.

"Mr. Hooper: May it please your Honor, I did not create this situation. Mr. Pactor came into this case without

---

4.    The order book entries and comment by the court during the hearing reveal that no hearing was scheduled on Mr. Ashbrook's petition to have the sale modified or set aside. This hearing was scheduled to determine distribution of proceeds from sale.

consulting me in any way whatsoever, and filed pleadings that I did not approve of, and I did not consider proper at this time. And the situation has become so incompatible, as I set out in my motion, that I cannot, and let me say this too, Mr. Pactor's attitude toward a malpractice action against me makes it impossible for me to continue to be responsible for any decision as made in this case.

\* \* \*

"Mr. Pactor: I'd just like to say it's not accurate to say that I did not confer with Mr. Hooper before the action that I took.

"Court: Well again, *the situation of persons changing lawyers when matters are set for hearing, and that being a grounds for continuance, it's not a ground for continuance in this Court.* I don't know of any Court that it is a grounds for continuance, and if you come into the case, then you should be prepared to be ready for trial on the date that it's set for. Therefore again your motion is overruled." (Emphasis added.)

The trial court reasoned that, because Mr. Ashbrook hired Mr. Pactor to contest the sale when Mr. Ashbrook already had Mr. Hooper as his attorney in the partition suit, Mr. Ashbrook had no good cause for a continuance. This reasoning ignores the peculiar circumstances of this case.

After Mr. Ashbrook purchased the property at the partition sale, he concluded that certain sale procedures and bidding activities at the sale were improper and warranted action by the trial court to modify or set aside the sale. He approached Mr. Hooper concerning this desire to contest the sale. Mr. Hooper was placed in the perplexing position of being asked to challenge a partition sale for which he served as both co-commissioner and attorney to co-commissioner. Mr. Hooper refused to challenge the sale, but he made no effort to withdraw as Mr. Ashbrook's attorney until the morning of the hearing.

In his motion for leave to withdraw, Mr. Hooper stated that Mr. Ashbrook "has informed his attorney that he has retained the

services of another attorney in this matter and no longer wishes to be represented by Hooper and Votaw." Mr. Hooper stated at the hearing:

"Court:      Did Mr. Ashbrook ask you to get out of the case?

"Mr. Hooper: Mr. Ashbrook walked out of my office when I consulted with him concerning the action in Mr. Pactor and I considered myself discharged. And he told me that he had to have some relief and intimated that I couldn't get it for him.

"Court:      I see, well I'm going to approve the order allowing you to withdraw."

Mr. Hooper stated that he considered himself discharged. Mr. Pactor indicated that Mr. Ashbrook and Mr. Hooper apparently agreed to terminate Mr. Hooper's employment one week before the hearing. Mr. Ashbrook's remarks are inconclusive on the issue. When the trial court denied the motions for continuance, Mr. Ashbrook objected to Mr. Hooper's withdrawal. The trial court approved the withdrawal, ordered Mr. Hooper to turn over his file to Mr. Pactor, and proceeded with the hearing.[5]

"One of the purposes of the rule prohibiting an attorney from withdrawing from a cause without leave of court is to protect the interest of the client." *In Re Annexation of Territory to City of Muncie* (1971), 150 Ind. App. 245, 254, 276 N.E.2d 198, 204.

"Even when he justifiably withdraws, a lawyer should protect the welfare of his client by giving due notice of his withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled,

---

5. After the noon recess, the hearing reconvened for a determination of distribution of proceeds. Counsel for Mrs. Ashbrook stated that Mrs. Ashbrook sought an accounting for the period from the date of the divorce decree to the date of sale.

"Court:      Is that what you understand it to be Mr. Pactor also?

"Mr. Pactor: Well your Honor I don't understand this part of the case very well. I have looked through several of the pleadings over the lunch hour, but the file which Mr. Hooper gave me contained only pleadings and no work product whatsoever other than, if you count a few letters he sent, cover letters, otherwise they're all pleadings."

cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm."

Code of Professional Responsibility;
Ethical Consideration 2-32.

Considering the animosity that had developed between Mr. Hooper and Mr. Ashbrook, we agree that the trial court wisely approved Mr. Hooper's withdrawal. The controversy which developed in the partition proceeding was not necessarily foreseeable or attributable to any particular person. However, we find verisimilitude in Mr. Ashbrook's argument that the trial court's refusal to grant a continuance left him without opportunity to effectively assert his rights in the matters determined at the hearing.

Mr. Hooper refused to contest the sale, and perhaps he refused with justification; we do not reach that issue. It is the duty of an attorney to "counsel or maintain such actions, proceedings or defenses only, as appear to him legal and just." IC 1971, 34-1-60-4 (Burns Code Ed.). Because of the incongruous nature of the roles which devolved upon Mr. Hooper, however, he had an affirmative duty to withdraw in a timely manner.

"Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant."

Code of Professional Responsibility;
Ethical Consideration 5-14.

Discretion of a trial court "is a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable." *Preuss v. McWilliams* (1967), 141 Ind. App. 602, 606, 230 N.E.2d 789, 792. Mr. Hooper failed to withdraw in a timely manner even though he found himself representing both a purchaser who wished to contest a sale and the co-commissioner who conducted the sale. In refusing to

grant a continuance, the trial court referred to the inconvenience which a continuance would cause the court. Mr. Hooper was serving as an arm of the court as co-commissioner and as an officer of the court as attorney to co-commissioner. *Bryan v. Yoder* (1947), 225 Ind. 57, 71 N.E.2d 474; *Harrison v. State* (1952), 231 Ind. 147, 106 N.E.2d 912. It is not unreasonable to require the trial court to suffer the inconvenience for which its own agent is significantly responsible.

The trial court was informed that Mr. Hooper refused to challenge the sale on behalf of Mr. Ashbrook and that Mr. Hooper remained as Mr. Ashbrook's attorney at least until one week before the hearing scheduled on the issue of distribution of proceeds. If Charles Ashbrook did actually dismiss Mr. Hooper as his attorney one week before the hearing,[6] he did so because Mr. Hooper refused to challenge the sale and with the belief that a continuance would be granted. When the trial court refused to grant a continuance, Mr. Ashbrook objected to Mr. Hooper's withdrawal but the trial court permitted Mr. Hooper's withdrawal despite objection and while again refusing to grant a continuance.

The parties have made numerous allegations in their briefs, only some of which are supported by the record. It is not our desire to cast censure upon any participant in this proceeding or to decide issues not properly before us. In this opinion we hold only that the trial court abused its discretion and thereby committed reversible error when it refused to grant a continuance for the hearing held October 26, 1976.

In summary, Charles Ashbrook paid $202,000 for property at a partition sale and later concluded that improprieties occurred which warrant having the sale modified or set aside. In the events that followed the trial court overlooked the fact that Mr. Ashbrook had certain rights emanating from his role as purchaser which were independent of his role as defendant in the partition suit. Because of this oversight, the trial court (a) proceeded with an unscheduled hearing on Mr. Ashbrook's petition

6. The record offers conflicting statements on this very issue.

to have the sale set aside or modified and (b) proceeded with the scheduled hearing even though it allowed Mr. Ashbrook's attorney of record to withdraw over objection.

By providing Mr. Ashbrook an opportunity to assert his claims and to present whatever evidence he has in a hearing held after due notice and without encroachment upon his right to representation by counsel, these matters can be finally settled. We remand this cause to the trial court for a hearing, held upon due notice, on the petition to modify or set aside the sale. If no basis is found for setting the sale aside, the trial court shall then determine the proper distribution of proceeds.

Reversed and remanded with instructions for further proceedings not inconsistent with this opinion.

Lowdermilk and Lybrook, JJ., concur.

NOTE—Reported at 366 N.E.2d 667.