In the Matter of Jephunneh LAWRENCE, A Member of the Bar of the District of Columbia Court of Appeals, Respondent.

No. 86–428.

District of Columbia Court of Appeals.

Argued Oct. 14, 1986.
Decided Dec. 22, 1986.[1]

JePhunneh Lawrence, Washington, D.C., pro se.

Michael S. Frisch, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on the brief, for respondent.

Before NEBEKER and MACK, Associate Judges, and GALLAGHER, Senior Judge.

PER CURIAM:

This is a review of a report and recommendation of the Board on Professional Responsibility which found that respondent JePhunneh Lawrence violated Disciplinary Rule 7–101(A)(1) by intentionally failing to seek his client's lawful objectives and DR 7–101(A)(2) by intentionally failing to carry out an employment contract for professional services. The Board recommended that respondent be suspended from the practice of law for ninety days. After a careful review of the record, we accept the Board's findings and adopt its recommended sanction.

The violations here arise out of a series of meetings between respondent and Mr. George E. Perry. Perry sought respondent's advice and services in relation to an employment discrimination claim against the Library of Congress (LOC). At the first meeting on May 27, 1983, Perry informed respondent that the discrimination claim was based on LOC's rejection of Perry's application for a GS–16 position and that the thirty-day limitation period for filing a complaint in the United States District Court was to expire on June 16, 1983.[2] At the second meeting on May 31, 1983, respondent and Perry signed a standard "Contingent Fee Contract" which included a retainer fee of $1,800. Perry paid $600 of the retainer at that time.

The subject matter of the third and final meeting on June 9, 1983, was hotly disputed in conflicting testimony. Perry testified that he was told that the documentation was excellent, that age discrimination was also involved, and that the complaint would be filed by the deadline. Perry stated that no future appointment was scheduled.

By contrast, respondent testified that prior to the final meeting, he had determined that retaliation for Perry's previous activity against the LOC was the only possible basis for a complaint. He had also realized that Perry's GS–13 status disqualified him on the merits from a GS–16 position unless LOC had issued him a waiver of the grade

---

1. The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. The Board's motion for publication has been granted by the court.

2. 42 U.S.C. § 2000e–16(c) (1982) in relevant part provides: "Within thirty days of receipt of notice of final action taken by a department, agency, or unit ... an employee or applicant for

requirement.[3] According to respondent, Perry became hostile to respondent's analysis of the case but represented that LOC had issued him a waiver. Respondent claimed that Perry said he would bring the waiver to respondent on or before an appointment allegedly scheduled for June 16, 1983.

No meeting on June 16 took place and no complaint was ever filed. On June 27, Perry sent respondent a letter thanking him for handling the discrimination claim. On July 1, Perry mailed respondent a $400 check as the first installment of the remainder of the retainer fee. One month later, respondent returned Perry's $400 check and wrote that due to Perry's failure to keep the appointment of June 16, and due to his unavailability by telephone that day, respondent had concluded that Perry had decided to forego the discrimination complaint. By letter, Perry flatly denied respondent's claims.

The Board resolved the factual dispute in Perry's favor. They accepted the Hearing Committee's findings that at the close of the last meeting, Perry reasonably believed that respondent would file suit. They also concluded that no meeting on June 16 was ever scheduled and that respondent did not withdraw from representing Perry until some six weeks after the running of the Statute of Limitations.

This court will accept findings of fact made by the Board "unless they are unsupported by substantial evidence of record." D.C. Bar R. XI § 7(3). Here, substantial evidence supports the Board's findings. Perry's letter of June 27, his remittance of a $400 installment on the retainer fee shortly thereafter, the absence of documentation in respondent's files indicating that a meeting had been scheduled for June 16, and respondent's delay in returning the $400 check all lead to the conclusion that respondent agreed to file suit, did not do so, and did not timely withdraw. Since filing the complaint was a lawful objective and since an employment contract between Perry and respondent had been entered into, respondent's actions constitute violations of DR 7–101(A)(1) and (2).

Respondent raises fifteen arguments on appeal but argues that "this entire controversy can be reduced to a conflict between the requirements of Rule 11, of the Federal Rules of Civil Procedure and the requirements or obligations under DR 7–101(A)(1), DR 7–101(A)(2) and DR 6–101(A)(3)." Basically respondent claims that since he had determined that Perry's discrimination claim was meritless, and since Fed.R.Civ.P. 11 prohibits an attorney from signing a complaint unless he believes "it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," respondent's compliance with DR 7–101(A)(1) and (2) by filing Perry's complaint would have subjected him to sanctions under Fed.R.Civ.P. 11.

Respondent's argument creates an artificial conflict and demonstrates a misunderstanding of the nature of the misconduct. If an attorney is prohibited from signing a complaint under Fed.R.Civ.P. 11 or the corollary Super.Ct.Civ.R. 11 because in good conscience he believes the underlying claims are not warranted in fact and/or law, DR 2–110(C)(1)(a) permits the attorney to withdraw from representation if the client insists upon going forward.[4] Here, contradictory evidence about whether respondent timely withdrew was resolved against respondent. As the Board found,

employment, if aggrieved by the final disposition of his complaint ... may file a civil action."

**3.** The LOC employment position Perry applied for clearly required "one year of specialized library experience or research experience at the GS–15 level in the Federal Service." Uncontradicted testimony established that Perry's previous status at LOC was GS–13.

**4.** The language of DR 2–110(C)(1)(a) in part replicates the language of Fed.R.Civ.P. 11 and

Super.Ct.Civ.R. 11. The disciplinary rule provides: "[A] lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because: (1) His client: (a) Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law."

if respondent had conscientiously feared violation of Fed.R.Civ.P. 11, he did not communicate this fear to Perry in any written form, did not record this fear in his file, did not urge Perry to seek another lawyer to represent him, did not explain that further installments on the "retainer" would not be required, and took no steps whatsoever to protect his client from the running of the Statute of Limitations.

The Board recommended that respondent be suspended from the practice of law for ninety days based on the inherent prejudice involved in allowing the limitations period to expire and respondent's past disciplinary record of two informal admonishments for similar misconduct. This court is obligated to adopt the Board's recommended disposition "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." D.C. Bar R. XI § 7(3).

While the short duration of the limitations period, Perry's difficult litigious nature, and the speculativeness of any economic prejudice to Perry might otherwise require us to mitigate the severity of the recommended sanction, after thoroughly reviewing comparable cases, we conclude that the Board's sanction is not unduly inconsistent nor unwarranted.[5] *See In re Alexander,* 466 A.2d 447 (D.C.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1680, 80 L.Ed.2d 154 (1984) (after three prior admonitions, three month suspension for neglect in the handling of two separate client matters); *In re Jamison,* 462 A.2d 440 (D.C. 1983) (after three prior admonitions, three month suspension for neglecting legal matters); *In re Knox,* 441 A.2d 265 (D.C.1982) (after one prior admonition, three month suspension for failing to take action before the expiration of the limitation period); *In re Ramus,* M–74–81 (6/23/81) (after no prior admonitions, six month suspension for neglect in the handling of two separate client matters). Accordingly, respondent is suspended from the practice of law for a period of ninety days, effective sixty days from the date of this decision.

*So ordered.*

---

5. Bar Counsel candidly admitted at oral argument that sanctions ranging from public censure to six month suspensions have been imposed for misconduct of this type. Our review reveals a similar trend and reminds us that the Hearing Committees, the Board, and this Court must continually strive to equalize sanctions for similar misconduct. Obviously, the prejudicial economic and professional consequences of a public censure pale in comparison to the economic and professional crises sometimes attendant upon long-term suspensions, particularly in the case of solo practitioners. We are prepared to accept that in this case, Bar Counsel, the Hearing Committee, and the Board determined that the recommended sanction was fairly consistent with comparable cases not only in terms of length but also in terms of impact upon the lawyer's practice.