Ladson A. MILLS, et al.,
Appellants/Cross–
Appellees,

v.

Dale A. COOTER, et al., Appellees/Cross–
Appellants.

Nos. 92–CV–1152, 93–CV–985.

District of Columbia Court of Appeals.

Argued May 12, 1994.
Decided Aug. 11, 1994.

Charles C. Parsons, Washington, DC, for appellants/cross-appellees.

Jeffrey Hines and Alvin I. Frederick, Washington, DC, for appellees/cross-appellants.

Before FERREN and SCHWELB, Associate Judges, and MACK, Senior Judge.

SCHWELB, Associate Judge:

A jury awarded plaintiffs Ladson A. Mills and Christina P. Mills $119,000 against Dale A. Cooter, Esq. and certain other attorneys associated with him (collectively Cooter) for professional negligence. The trial judge denied Cooter's motion for judgment notwithstanding the verdict. On appeal,[1] Cooter contends that the Mills failed to establish, through expert testimony, either the applicable standard of care or a violation thereof, and that as a matter of law, the conduct in which he was shown to have engaged did not constitute legal malpractice. We agree, reverse, and direct the entry of judgment in Cooter's favor.

## I.

This controversy began with an agreement by the Mills to sell certain real estate to Edgar Weisman. Weisman ultimately defaulted, causing the Mills to lose $119,000. According to the Mills, Weisman, who allegedly had a prior history of fraudulent real estate transactions, swindled them, essentially by inflating the value of certain properties owned by him in order to make his financial capacity appear substantially greater than it was.

The Mills approached Cooter's law firm, then known as Cooter, Gell & Cooter, for counsel and representation. They discussed with Cooter the pros and cons of suing Weisman and a number of other potential defendants, including the settlement attorneys in the transaction, and two real estate professionals, namely Neil Degnan of Begg Realty, the listing broker, and Mary Jacobsen of Mount Vernon Realty. Ms. Jacobsen had worked with Weisman on several previous transactions and had represented him during the negotiations with Degnan.

Cooter was willing to bring suit against Weisman and the settlement attorneys, but declined to take any legal action against the brokers. Cooter maintained that there was no evidence that Degnan or Mrs. Jacobsen had made or participated in any fraudulent representations or engaged in any other wrongful conduct. It was also Cooter's view that Ms. Jacobsen represented only Weisman and could not simultaneously be an agent of the Mills, and that there was therefore no contractual or fiduciary relationship between the Mills and Ms. Jacobsen based on the

---

1. Both the Mills and Cooter appealed from the judgment of the trial court. In light of our disposition of Cooter's cross-appeal, the Mills' appeal is moot.

facts presented. Moreover, Mrs. Mills was close to Degnan's family, and Mr. Mills testified that while he was willing to join Degnan as a defendant, his wife "would rather" not; Cooter testified that Mrs. Mills insisted that Degnan not be sued.[2]

Cooter's unwillingness to sue Degnan (and his principal) and Ms. Jacobsen (and her principal) was communicated to the Mills early in the representation, and there is no doubt that the clients understood Cooter's position. Indeed, on November 3, 1983, Mr. Mills insisted in a letter that "I still contend that we have recourse against the realtors." The Mills did not attempt to secure other counsel, although they would have had ample time to do so before the statute of limitations expired.

In February 1984, in conformity with his previously announced intention, Cooter brought suit on behalf of the Mills against the settlement attorneys. *Mills v. Slocum, et al.*, C.A. No. 2140–84 (Super.Ct.D.C.). Degnan and Ms. Jacobsen were not joined as defendants. In 1986, the action was settled against the settlement attorneys for $12,500.[3] The Mills agreed to the settlement. Weisman had declared bankruptcy, and no recovery was possible against him.

In 1988, disappointed with the results of the proceedings brought by Cooter on their behalf, the Mills brought the instant action against Cooter, alleging professional negli-

gence and breach of fiduciary duty. The suit was predicated on Cooter's refusal to bring suit against the brokers for fraud, breach of contract, breach of fiduciary duty, and racketeering. In June 1992, following pretrial proceedings in which a part of the Mills' claim was dismissed as abandoned,[4] the case proceeded to jury trial, and the jury returned a verdict of $119,000 in favor of the Mills. The judge denied Cooter's motion for judgment n.o.v. These appeals followed.[5]

## II.

The basic question before us is whether the Mills presented sufficient evidence to permit an impartial jury to conclude that Cooter's failure to join the brokers as defendants in *Mills v. Slocum* constituted legal malpractice.[6] The Mills contend that both brokers owed them a fiduciary duty,[7] that they knew or should have known of Weisman's fraudulent acts, and that they wrongfully failed to disclose these facts to the Mills, thus participating in the fraud and contributing to the Mills' loss. Cooter claims, on the other hand, that Ms. Jacobsen was Weisman's agent, that she could not simultaneously act on the Mills' behalf, and that she owed the Mills no fiduciary duty.[8] He contends that he could not sue Degnan because Mrs. Mills had not authorized such a suit. Cooter also maintains that neither Degnan nor Ms. Jacobsen had made or participated in any

---

**2.** In response to an interrogatory, however, one of the partners of the Cooter firm represented that the Mills had interposed no restriction as to who the potential defendants should be.

**3.** This settlement barely exceeded Cooter's legal fees in the original litigation.

**4.** The Mills' claim that Cooter had negligently failed to bring a civil Racketeer Influenced Corrupt Organization ("RICO") claim on behalf of the Mills was dismissed at pretrial as abandoned, because the motions judge found that the Mills had failed to comply with another judge's pretrial order.

**5.** In their appeal, the Mills contested the motions judge's pretrial ruling with respect to the civil RICO issue. See note 4, *supra.* They also challenged the trial judge's unfavorable ruling with respect to their claim for interest on the judgment.

**6.** The Mills claim that Cooter's conduct constituted not only malpractice but also breach of fidu-

ciary duty. They apparently rely on the same facts in support of both claims. Their expert witness laid no separate foundation for the breach of fiduciary duty claim, and on this record our disposition of the claim of legal malpractice applies with equal force to the claim of breach of fiduciary duty. *See Geiserman v. MacDonald*, 893 F.2d 787, 793–94 (5th Cir.1990).

**7.** The Mills claimed that Ms. Jacobsen was a subagent of Degnan, the listing agent, that she shared in the commission paid by the Mills, and that she therefore owed the Mills a fiduciary duty. *See, e.g., Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 364 (D.C.1984).

**8.** Cooter relies primarily on *Urban Investments, Inc. v. Branham*, 464 A.2d 93, 96 (D.C.1983) for the proposition that the familiar maxim that a man (or woman) cannot serve two masters applies in the present context.

fraudulent representation, that Mr. Mills, an experienced real estate entrepreneur, did not rely on any such representation, and that he (Cooter) therefore exercised reasonable professional judgment in declining to join either broker in the suit.

Both parties presented the testimony of legal experts in support of their respective contentions. The Mills' expert, Charles Acker, Esq., testified that, in his opinion, Cooter had deviated from accepted legal standards (which standards Acker did not, however, define) in failing to pursue relief against Degnan and Ms. Jacobsen. Cooter's legal expert, Professor Earl C. Dudley, testified that although a reasonable attorney in Cooter's position might properly have considered joining Ms. Jacobsen as a defendant, it was a reasonable exercise of professional judgment for Cooter to decline to join her. In Dudley's view, Cooter's decisions with regard to the representation of the Mills were fully consistent with applicable professional standards.

■ The testimony of the experts identifies the character of this controversy. This is not a case in which the attorneys are alleged to have forgotten to sue appropriate defendants, to have missed a statute of limitations, to have mislaid the file, or to have made some error or omission of that or similar character. Rather, the Mills contend that Cooter assessed the merits of the potential case against Degnan and Ms. Jacobsen incorrectly, that Cooter made an erroneous legal judgment in not joining the two brokers as defendants, and that the Mills were thus deprived of recourse against parties who were liable to them as a matter of law. We conclude that where, as here, Cooter's unwillingness to sue the brokers was communicated to the Mills early in the representation, well before the expiration of the statute of limitations, and where reasonable attorneys could differ with respect to the legal issues presented, the second-guessing after the fact of Cooter's professional judgment was not a

sufficient foundation for a legal malpractice claim, and that the evidence was insufficient to support a verdict for the Mills. The Mills did not present testimony from a legal expert demonstrating that Cooter violated the applicable standard of care and, indeed, they could not have done so, because such testimony would have been contrary to controlling legal principles.

### III.

■ An attorney is an officer of the court. When he signs a pleading, he certifies that its contents are well-grounded in fact and law. Super.Ct.Civ.R. 11; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 392, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *see also* D.C.Bar R. X § 3.1. If, in the attorney's view, a position urged on him by the client is not well-grounded, then Rule 11 precludes the attorney from asserting it; rather, the attorney should withdraw from the representation. *See In re Lawrence*, 526 A.2d 931, 932 & n. 4 (D.C.1986) (per curiam).[9] The Mills contend that Cooter should have sued Degnan and Ms. Jacobsen in spite of Cooter's belief that claims against the brokers lacked merit. They assert, in essence, that Cooter's professional judgment was erroneous.

■ An attorney is under no obligation, however, to maintain a position which the attorney does not believe that he can honorably defend, even if that position is urged upon him by the client. *See* 7A C.J.S. *Attorney and Client* § 258, at 469 & n. 33 (1980 & Supp.1994). It is the duty of an attorney to "counsel or maintain such actions . . . only as appear to him legal and just." *Ashbrook v. Ashbrook*, 174 Ind.App. 134, 366 N.E.2d 667, 669 (1977) (quoting Indiana statute). The determination whether a proposed suit is "legal and just" must be made by the attorney who signs the pleadings, and may not be delegated to the client or to anyone else.

9. Cooter testified at trial that "in the face of what [the Mills] told me, I didn't have any evidence at all, none, to give me any good-faith basis to sue Betty Jacobsen." Noting that fraud and breach of fiduciary duty are serious charges that destroy reputations, and that such allegations should not be made lightly, Cooter testified that if the Mills had insisted that he join Degnan and Ms. Jacobsen, he would have withdrawn from the representation. He explained that he had done just that in a case involving Weisman and another aggrieved seller.

The conduct of litigation generally rests within the discretion of the attorney, provided that the attorney acts in good faith and in compliance with ethical requirements. *Knapp v. McFarland,* 344 F.Supp. 601, 615 (S.D.N.Y.1971), *modified on other grounds and remanded,* 457 F.2d 881 (2d Cir.), *cert. denied,* 409 U.S. 850, 93 S.Ct. 59, 34 L.Ed.2d 92 (1972). An attorney and client may sometimes disagree as to what the attorney should do to protect the client's interest. We do not believe that under such circumstances, the attorney is required or even permitted to disregard his own professional judgment. In any event, he may not be held to have engaged in malpractice if he declines to do so.

In *Don v. Nix,* 886 F.2d 203 (8th Cir.1989), on which Cooter places substantial reliance, the court explained that

> [w]hen an attorney does not wish to argue a claim that his client feels strongly about, he has a duty to tell the client forthrightly so that the client can decide whether to retain a new attorney.

*Id.* at 207. In our view, this articulation correctly sets forth the attorney's responsibility in a situation such as the present one. If Cooter was unwilling to file suit against Degnan and Ms. Jacobsen, it was his obligation to inform the Mills of this fact, in timely fashion, so that they could consider retaining other counsel. It is undisputed, however, that Cooter did exactly that.[10]

Once Cooter had apprised the Mills of his position, he could not be held liable for malpractice even if a court or jury were to conclude, after the fact, that his decision was an erroneous one. In *Mazer v. Security Ins. Group,* 368 F.Supp. 418 (E.D.Pa.1973), *aff'd,* 507 F.2d 1338 (3d Cir.1975), the plaintiffs sought to found a claim of legal malpractice upon counsel's failure to join a medical facility as a defendant in a medical malpractice case. There was no claim that the attorney had overlooked the potential defendant. Rather, it was counsel's legal judgment that was challenged. The court ruled that there was no legal malpractice because

> there was no showing that the failure to join the Medical Center was not a conscious exercise of judgment by [the attorney], as contrasted with an oversight. An informed judgment, even if subsequently proven to be erroneous,[11] is not negligence.

*Mazer,* 368 F.Supp. at 423.

In the present case, the reasoning of *Mazer* applies *a fortiori.* Here, as contemplated in *Don v. Nix,* Cooter communicated to the Mills in timely fashion his unwillingness to join the real estate brokers as defendants in the original suit. The expert testimony at trial established, at least, that reasonable attorneys could differ with regard to the feasibility and propriety of a suit against the brokers. Even if we were to accept the legal analysis offered by Acker and reject the contrary opinion of Dudley, we agree with the trial and appellate courts in *Mazer* that such retrospective disagreement cannot be the predicate for a finding of legal malpractice. An attorney is not liable for an error of judgment regarding an unsettled proposition of law. 1 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 14.1, at 812 & n. 4 (3rd ed. 1989 & Supp.1993).

We do not suggest that a legal malpractice claim could *never* lie as a result of an attorney's exercise of flawed legal judgment with respect to the selection of defendants. *See*

---

**10.** The Mills' acquiescence in the settlement of the initial suit alone casts grave doubt on the viability of their action against Cooter. In *Case v. Ricketts,* 41 A.2d 304 (D.C.1945) (per curiam), the plaintiff claimed that her attorney had improperly failed to join a defendant in her underlying claim for wrongful confinement. This court rejected her contention:

> With respect to appellant's claim that Mr. Wells should have been joined as defendant in the Maryland proceeding, it is sufficient to say that she knew he was not named, that she was present during the entire trial and testified therein, and it is now too late to claim that the

wrong parties were sued or additional parties should have been sued.

*Id.* at 305. *See also Wright v. Fontana,* 290 So.2d 449, 453 (La.Ct.App.1974), holding that even where a discharged attorney erroneously failed to include one prospective defendant in the suit, he was not liable for malpractice where he disclosed the error to his former client and to the client's new counsel before the statute of limitations expired.

**11.** We do not suggest that, in this case, Cooter's judgment was proved to be erroneous.

*Mims v. Mims,* 635 A.2d 320, 325 n. 12 (D.C.1993). "The future may bring scenarios which prudence counsels our not resolving anticipatorily." *Roberts–Douglas v. Meares,* 624 A.2d 405, 424 n. 26 (D.C.1992) (quoting *Florida Star v. B.J.F.,* 491 U.S. 524, 532, 109 S.Ct. 2603, 2608, 105 L.Ed.2d 443 (1989)). If two rich miscreants had inflicted severe personal injuries on the Mills, and if Cooter had refused or failed to sue them, a different situation would be presented. But, given Cooter's early communication of his intentions, and the obvious potential for disagreement among reasonable attorneys as to whether the brokers should be joined as defendants, we perceive no substantive basis here for a finding of professional negligence.

### IV.

The parties have addressed this issue in a slightly different way, focusing more on the expert testimony regarding Cooter's conduct than on the conduct itself.[12] Specifically, the Mills argue that Acker, their expert witness, testified that Cooter violated the applicable standard of care, and that it was for the jury to determine whether Cooter was negligent. We do not agree.

■■■ In order to prove legal malpractice, a plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of. *O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C.1982). Unless the attorney's lack of care is so obvious that the jury can find negligence as a matter of common knowledge, the standard and its violation must be proved by expert testimony. *Id.; see generally* Annotation, *Admissibility and necessity of expert evidence as to standards of practice and negligence in malpractice action against attorney,* 14 A.L.R.4th 170, 179–84 (1982 & Supp.1993).

■■■ In the present case, the question is whether Cooter violated the standard of care by declining· to join Degnan and Ms. Jacobsen in the suit because he believed such action to be legally unwarranted, even though he had apprised his clients of his position early in the representation and the clients therefore had the opportunity to retain other counsel. The Mills' expert, as we have noted, did not identify the standard of care at all, and nothing in his testimony even remotely touched on the obligations of an attorney who disagrees with a proposed course of action, but who makes his position known to the client well before the expiration of the statute of limitations.[13]

Accordingly, we conclude that there was no expert testimony, tied to the specific context of this case, which would have supported a determination by the jury that Cooter's conduct constituted legal malpractice. Moreover, in light of *Don v. Nix, Mazer,* and the other authorities discussed in Part II of this opinion, any proffered testimony to the effect that Cooter was required under the applicable standard of care to do more than he did in this case would have run afoul of the applicable law.

---

12. In his presentation to the trial court that the Mills' case was insufficient, Cooter's counsel made little if any mention of Cooter's timely communication to his clients of his unwillingness to sue the brokers—a point on which Cooter places considerable emphasis on appeal. Cooter, however, sufficiently articulated at trial and in his motion for judgment n.o.v. his claim that the Mills' evidence was insufficient to establish a wrongful departure of the standard from care, and "parties are not limited to the precise arguments they made below." *Yee v. City of Escondido, Cal.,* —— U.S. ——, ——, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992). Moreover, even if we were to consider only the specific arguments clearly presented by Cooter to the trial court, we would be compelled to reverse for the reasons stated in the text of this Part IV of the opinion.

13. The closest Acker came to identifying the applicable standard of care came in the following responses to counsel's leading questions:

Q. And, [you] were asked to determine if the defendant lawyers whom the Mills had retained, the law firm of Cooter, Gell & Cooter, had managed their clients' case with acceptable standards of the legal profession?
A. Yes, I was asked that.
Q. And did you determine that the Defendants had, in fact, deviated from accepted legal standards in either the selection of the defendants to be pursued or the legal theories or the lawsuit that was brought by the Cooter firm on the Mills behalf?
A. Yes, I did.·

## V.

For the foregoing reasons, we hold that the evidence was insufficient to permit an impartial jury to find that Cooter's conduct constituted legal malpractice, and that the trial judge erred in denying Cooter's motion for judgment n.o.v. Accordingly, we reverse the judgment in 647 A.2d 1118 and remand the case to the trial court with directions to enter judgment for Cooter. The Mills' appeal, 647 A.2d 1118, is dismissed as moot.[14]

*So ordered.*

---

**14.** The vacation of the judgment for the Mills on the malpractice claim makes the question of interest on that judgment academic. Moreover, the rationale of our holding that no malpractice was shown in relation to Cooter's failure to join Degnan and Ms. Jacobsen as defendants with respect to the Mills' local law claim applies with equal force to any civil RICO claim. We therefore need not and do not reach the question whether the motions judge erred in holding that the Mills had abandoned that claim by failing to comply with the pretrial order.

